EAST BATON ROUGE PARISH  C-677119
Filed Dec 19, 2018 11:41 AM   21/D
Deputy Clerk of Court
FAX Received Dec 10, 2018

CIVIL DISTRICT COURT FOR THE 19th JUDICIAL DISTRICT
STATE OF LOUISIANA

No._____                                  Div._____

ELLIS RAY HICKS

VS.

LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS, JAMES LeBLANC, TERRY LAWSON, and DOES 1-10,

FILED: _____          DEPUTY CLERK: _____

### PETITION FOR NEGLIGENCE, FALSE IMPRISONMENT, and VIOLATION OF CONSTITUTIONAL RIGHTS

NOW INTO COURT, through counsel, comes Petitioner Ellis Ray Hicks, who states:

1. This is a case about Department of Corrections employees' mistaken belief that *they* make the call on the length of a prisoner's sentence – not a judge.

2. Under Louisiana law, an inmate is entitled to "jail credit" – a reduction in his sentence for however many days he spent in custody prior to the imposition of sentence. La. Code Crim. Proc. Art. 880(A).

3. A judge is not generally supposed to award jail credit for time in custody for crimes other than the one he sentenced for. La. Code Crim. Proc. Art. 880(E).

4. But if the judge *does* award jail credit for another crime, the law is crystal clear: the Department of Corrections **must** honor that jail credit unless it is overturned. *Boddye v. La. Dept. of Corrections*, 175 So. 3d 437, 441 (La. Ct. App. 1st 2015) ("is well settled that the determination of the sentence a defendant is to serve, and what, if any, conditions are to be imposed on that sentence, is made by the trial judge, not the defendant's custodian").

5. But Terry Lawson, an employee at the DOC's time computation department, does not believe that. He refused to give Ellis Ray Hicks judge-ordered credit for time Mr. Hicks spent in jail in Arkansas, on the basis that a judge can't give an inmate jail credit for time from a different crime.

6. In a recorded phone call, Mr. Lawson explained the way he does things:

Mr. Lawson:  [An inmate] can only get jail credit for the time he served . . . on that particular hard labor sentence. If he got arrested for jaywalking, and you're in jail for a three day sentence, and while you're in jail for jaywalking they figure out you committed a burglary, you can't get those three days for jail credit on your burglary charge.

Atty. Most:  Unless the judge were to say, give him credit for that jaywalking.

Mr. Lawson:  No. [laughing] A judge has nothing to do with time comp. And that's where, they sometimes think they do, but they don't. **The judges have no say whatsoever to us applying our time comp laws.** . . .

1

Atty. Most: So it doesn't matter what the judge orders, the judge can order whatever he wants, and you guys are just going to –

Mr. Lawson: Exactly. . . .

Atty. Most: So even if a judge says I want him to get credit for time served for what he spent in jail for jaywalking on this battery charge –

Mr. Lawson: He cannot do that, sir. The judge does not have that power. The judge does not have that power, unfortunately. **A lot of judges make those comments, but they are not enforced on our side of the street** when we do the math.

7. Based on a jail credit order by Judge Clason of the Second Judicial District, Petitioner Ellis Ray Hicks should have been a free man on February 24, 2018.

8. But because Mr. Lawson refused to enforce the order of the sentencing judge, Mr. Hicks wasn't released until April 25, 2018. He was only released because Attorney Most notified DOC Headquarters about Mr. Lawson's behavior.

9. Unfortunately, Ellis' experience of being held past his release date is neither unique nor even unusual in Louisiana – and the DOC knows it. Even the DOC's own counsel (Attorney General Jeff Landry) admitted in a March 8, 2018 op-ed that "is a layer of incompetence so deep that the Corrections Department doesn't know where a prisoner is on any given day of the week or when he should actually be released from prison."[1]

10. For that reason, Ellis Ray Hicks files this lawsuit to hold the DOC accountable and to end their practice of imprisoning individuals who should be free.

### Petitioner:

11. Petitioner Ellis Ray Hicks is a person of the full age of majority maintaining a residence in Haynesville, LA. Upon information and belief he respectfully represents the facts and causes of action pled herein against the Defendants.

### Defendants:

12. Louisiana Department of Public Safety & Corrections ("DOC") is an arm of the State of Louisiana.

13. James LeBlanc is the Secretary for the Louisiana Department of Public Safety & Corrections and a final policymaker. He is sued in his individual and official capacities.

14. Terry Lawson is a DOC employee who was tasked with ensuring Ellis' proper release. He is sued in his individual and official capacity.

15. Does 1 – 10 are as-yet-unknown persons involved in the illegal imprisonment of Ellis.

---

[1] Sen. John Kennedy and Atty. Gen. Jeff Landry, *Criminal justice reform actually hurting public safety*, The Advocate (Mar. 8, 2018) (emphasis added).

## Jurisdiction and Venue

16. Jurisdiction is proper in this Court because the Court maintains subject matter jurisdiction over the dispute based on the object of the demand and the amount in controversy.

17. Venue is proper in this Court pursuant to La. R.S. 13:5104.

## Background and Facts

| | |
|---|---|
| First release date calculated by Lawson: | Feb 28, 2018 |
| Second release date calculated by Lawson: | May 23, 2019 |
| Third release date calculated by Lawson: | January 8, 2018 |
| Fourth release date calculated by Lawson: | July 11, 2018 |
| Legal, court-ordered release date: | Feb 24, 2018 |
| Date Hicks' attorney contacts DOC HQ: | April 20, 2018 |
| Hicks' actual release date: | **April 25, 2018** |



Period of Illegal Incarceration

**Table 1: Summary of Key Dates**

A. <u>Ellis Ray Hicks was held for 60 days past his court-ordered release date.</u>

18. On July 25, 2016, Ellis Ray Hicks was arrested in Louisiana for a parole violation. His parole stemmed from an arrest and incarceration in Arkansas, for which Ellis served 455 days in Arkansas' Faulkner County Jail.

19. On January 3, 2017, Ellis pled guilty to parole revocation, and Judge Clason of the Second Judicial District ordered that she would "revoke Mr. Hicks' probation and order him to serve four years at hard labor, which is the new underlying sentence and give him credit for time served in Arkansas." Ellis served his sentence at the Claiborne Parish Detention Center.

20. On February 23, 2017, Terry Lawson, a DOC employee at David Wade Correctional Center, calculated Ellis' sentence to be February 28, 2018. This date most closely reflected Ellis' Judge-ordered sentence and included his Arkansas time served (although would still have overdetained Ellis by four days).

21. But on March 10, 2017, Lawson re-calculated Ellis' sentence, removing his credit for time served, and coming up with a date over a year later: May 23, 2019.

22. When Ellis sought to figure out why his sentence was changed and time served credit removed, he was told by Brian Flynn, the Claiborne Parish Clerk of Court, that the Department of Corrections would not give Ellis credit for time served "without an official document from the State of Arkansas showing the credits that you are due."

3

23. Privately, Lawson informed Ellis that Lawson has decided that Ellis' crime did not qualify him to receive credit for time served – even though credit for time served in Arkansas was specifically and explicitly part of Ellis' Judge-mandated sentence.

24. Nevertheless, Ellis and outside friends and family advocated on Ellis' behalf. On June 23, 2017, Ellis was able to get a letter from the Arkansas Department of Corrections confirming his time served in Arkansas. This letter was copied to the Claiborne Detention Center, David Wade Correctional Center, and Brian Flynn.

25. On July 3, 2017, the letter regarding Ellis' Arkansas credit was sent to Lawson, who calculated Ellis' sentence again, and again came up with a different date. This time, Lawson decided that the release date should be January 8, 2018.

26. Unfortunately, the matter did not resolve there. Wanting to be sure that his credits were properly accounted for, on July 11, 2017, Ellis filed a motion to clarify the record. He requested that the record reflected that Ellis was sentenced to four years, with credit for time served in Arkansas.

27. Meanwhile, Ellis' advocates on the outside continued to collect documentation of Ellis' Arkansas time. JoAnn Swint, Ellis' friend from church, requested documentation from the Faulkner County Jail about Ellis' Arkansas time, and on August 12, 2017, sent it to various parties in the DOC.

28. Three days later, on August 15, 2017, Ellis' motion was granted, and the Judge again ordered that Ellis' sentence be "four (4) years at hard labor with credit for **all time served, including the time served in the State of Arkansas**." (Emphasis added.) On September 8, 2017, that clarified record was sent to David Wade Correctional Center by Brian Flynn.

29. On December 13, 2017, Lawson calculated Ellis' sentence *again*, coming up with another release date. This time, Lawson changed Ellis' release date to July 11, 2018.

30. It was unclear at the time why Terry Lawson continued to alter Ellis' release date, but both Ellis and his advocates sought to uncover why. Several DOC employees eventually told them why: retaliation.

31. Lawson told Ms. Swint that he is in charge of a prisoner's sentence, not the Judge, and that "anyone who messes with me gets longer time." Apparently, Lawson considered contacting him to check in on a prisoner's sentence to be "messing" with him, as Ellis' great aunt was told by Lawson that "an awful lot" of people were calling him about Ellis.

4

32. Despite Lawson, Ellis continued to seek his lawful release. On January 5, 2018, Ellis filed an Administrative Remedy Procedure specifically regarding Lawson refusing to consider Ellis' Arkansas time.

33. On January 10, 2018, Ellis filed a motion to enforce the Judge's order, and on January 12, 2018, Judge Clason ordered a hearing on the matter.

34. On February 6, 2018, a habeas hearing was held, in which the District Attorney and Judge Clason confirmed that Ellis' original sentence included time served in Arkansas. However, Judge Clason told Ellis that she could not help him, and he needed to file a lawsuit in Baton Rouge against the DOC.

35. But Ellis was not deterred, and he continued to file documents in an attempt to get released on his legal release date. On February 14, 2018, Lawson told Ms. Swint that Ellis "did not pay certain fees," that "if someone keeps bothering me about their computations they can do more time," and "just because someone is in jail does not mean that's when their time starts."

36. Lawson also told Ms. Swint to call the Probation Office that was in charge of Ellis' probation when it was revoked for more information. When she did so, Mr. Phillips at the Probation Office told her that Baton Rouge can override a judge's decision regarding time served.

37. In the days leading up to Ellis' legal, February 24 release date, Ellis wrote to state and local authorities and spoke to correctional officers about the fact that he should be going free on February 24.

38. On February 24, 2018, Ellis was not released as legally required.

39. During the time of Ellis' overdetention, his elderly great aunt suffered repeated health issues, and Ellis was unable to care for her. He is now her main caretaker.

40. Ellis continued to advocate for his release, and was eventually connected to an outside civil rights attorney, William Most.

41. On April 17, 2018, Attorney Most called Lawson to inquire why Ellis had not yet been released months past his legal release date.

42. In a recorded phone call, Mr. Lawson explained the way he does things:

Mr. Lawson: [An inmate] can only get jail credit for the time he served . . . on that particular hard labor sentence. If he got arrested for jaywalking, and you're in jail for a three day sentence, and while you're in jail for jaywalking they figure out you committed a burglary, you can't get those three days for jail credit on your burglary charge.

Atty. Most: Unless the judge were to say, give him credit for that jaywalking.

5

Mr. Lawson: No. [laughing] A judge has nothing to do with time comp. And that's where, they sometimes think they do, but they don't. **The judges have no say whatsoever to us applying our time comp laws.** . . .

Atty. Most: So it doesn't matter what the judge orders, the judge can order whatever he wants, and you guys are just going to –

Mr. Lawson: Exactly. . . .

Atty. Most: So even if a judge says I want him to get credit for time served for what he spent in jail for jaywalking on this battery charge –

Mr. Lawson: He cannot do that, sir. The judge does not have that power. The judge does not have that power, unfortunately. **A lot of judges make those comments, but they are not enforced on our side of the street** when we do the math.

43. On the phone, Mr. Lawson confirmed that Mr. Hicks was only getting 904 days of jail credit.

44. That number corresponds to only Mr. Hicks' pretrial detention in Louisiana, and so accounts for no Arkansas time.

45. On April 20, 2018, Attorney Most spoke with and sent an email to Jonathan Vining at DOC headquarters.

46. On April 25, 2018, sixty days after his legal release date, Ellis Ray Hicks was finally released.

47. The Department of Corrections and its employees believe that they, not Judges, sentence criminal defendants. Defendants in this case also seem to believe that not only do they set the sentences, but they can change sentences as they see fit if they feel inconvenienced by a prisoner or his advocates. Petitioner seeks to stop this arbitrary and capricious behavior.

B. <u>The DOC has a documented, admitted pattern of holding inmates past their release date.</u>

48. The Department of Public Safety & Corrections has a well documented pattern of overdetention. For example, in *Chowns v. LeBlanc*, La. 37th JDC 26-932, DOC employees testified as to the consistent overdetention they observed:

    a. Tracy Dibenetto, a DOC employee, testified that DOC staff have discovered approximately <u>one case of overdetention per week for the last nine years</u>. Ms. Dibenetto also testified that inmates are sometimes incorrectly incarcerated for periods of up to a year.

    b. Henry Goines, a DOC employee whose job was to review sentence computations for the assistant secretary, testified that he typically discovered "one or two [inmates] a week" who were eligible for immediate release.

    c. Cheryl Schexnayder, a DOC records analyst, testified that in the course of her job, she had looked at inmates' sentences and found that they had been done wrong and the inmate was entitled to immediate release.

    d. Sonja Riddick, a DOC employee, responded to the question: "Did you ever find a time when you looked at an inmate's records and you say, this man should be out now?" with the answer: "<u>Oh yes.</u>"

49. The DOC's own counsel has admitted to the DOC's pattern of overdetention. On March 8, 2018, Attorney General Jeff Landry wrote an op-ed conceding that there "is a layer of incompetence so deep that the Corrections Department doesn't know where a prisoner is on any given day of the week or when he should actually be released from prison."[2]

50. After finding no remedy elsewhere, Petitioner has initiated this action in order to recover his damages.

## CAUSES OF ACTION

51. Petitioner asserts the following Causes of Action, plead in the alternative where appropriate, against the Defendants.

### Count 1 – False Imprisonment

52. "The civil cause of action for false imprisonment requires proof of restraint without color of legal authority... There is no requirement of proving that the confinement be intentional." *Prisk v. Palazzo*, 668 So.2d 415, 417(La. App. 4 Cir. 1996) (citations omitted.). A custodian's obligation is to see that the sentence imposed is the sentence served. *State ex rel. Pierre v. Maggio*, 445 So.2d 425, 426 (La.1984); *State v. Criminal Dist. Court Parish of Orleans*, 433 So. 2d 712 (La. 1983).

53. On February 24, 2018, the legal authority to detain Ellis expired.

54. Defendants had possession of several court documents from Claiborne Parish and the State of Arkansas unequivocally demonstrating that Ellis was entitled to credit for time served in Arkansas, which should have resulted in a release date of February 24, 2018.

55. Defendants, however, imprisoned Ellis until April 25, 2018,

56. Defendants thus falsely imprisoned Ellis by unlawfully holding him past his release date.

### Count 2 - Negligence

57. Due to their professional roles as jailers, Defendants owed duties to avoid overdetention to the persons in their custody, including Ellis. *Chowns v. LeBlanc*, La. 37th JDC 26-932 ("The defendants represent the State of Louisiana. It was their job and responsibility to accurately determine this defendant's, or any person's, correct release date. They have a duty to timely release the defendant."); *Porter v. Epps*, 659 F. 3d 440, 445 (5th Cir. 2011) (a jailer has "not only the duty to protect a prisoner, but also the duty to effect his timely release.")

58. These duties were breached by Defendants' acts and omissions, including the failure to timely release Ellis even after repeated inquiries by Ellis, Ms. Swint, and Ellis' great aunt. *See*

---

[2] Sen. John Kennedy and Atty. Gen. Jeff Landry, *Criminal justice reform actually hurting public safety*, The Advocate (Mar. 8, 2018) (emphasis added).

7

*Chowns v. LeBlanc*, La. 37th JDC 26-932 ("DOC does have a duty to Mr. Chowns, and they have breached that duty".)

59. Defendants' acts and omissions were the cause in fact of Ellis' harm because they resulted in his illegal incarceration for 60 days.

60. As a result of Defendants' acts and omissions, Ellis suffered actual, foreseeable harm.

### Count 3 - Violation of the U.S. Constitution

61. The Fourteenth Amendment Due Process Clause is violated where a prisoner remains incarcerated after the legal authority to hold him has expired. *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980). No privilege enables a jailer to detain a prisoner beyond the period of his lawful sentence. *Whirl v. Kern*, 407 F.2d 781, 791 (5th Cir. 1968); *Powell v. Barrett*, 376 F. Supp. 2d 1340, 1351 (N. D. Ga. 2005) (detainee has constitutional right to be free from continued detention after it was or should have been known that he was entitled to release).

62. According to black-letter law, jailers may not imprison prisoners longer than their sentences. Recent Fifth Circuit precedent recognized that "There is a Clearly Established Right to Timely Release from Prison."

63. Ellis Ray Hick's 14th Amendment rights were violated when he was held for 60 days after the legal authority to hold him had expired. As Defendants were acting under the color of state law, Petitioner's claims are actionable under 42 U.S.C. § 1983.

### Count 4 - Violation of the Louisiana Constitution

64. Article One, Section Two of the Louisiana Constitution of 1974 guarantees that "[n]o person shall be deprived of life, liberty, or property, except by due process of law."

65. By reason of the same conduct that violated Ellis' federal constitutional rights, Defendants violated his state constitutional rights to liberty and due process.

66. This conduct resulted in Ellis' overdetention and caused the physical, emotional and pecuniary damages as described above and below.

### Count 5 – First Amendment Retaliation

67. Lawson told Ms. Swint that he is in charge of a prisoner's sentence, not the Judge, and that "anyone who messes with me gets longer time."

68. Lawson extended Mr. Hicks' release date in retaliation for filing ARPs, motions to the court, *etc.*

69. ARPs and mtoions to the court are protected by the First Amendment right to petition.

70. By extending Mr. Hicks' release date without justification in response to Mr. Hicks' petitions, Mr. Lawson conducted prohibited First Amendment retaliation.

### Count 6 - *Monell* and Failure to Train/Supervise (DPS&C and LeBlanc Only)

71. The misconduct described above was caused by the policies, practices, and customs of Defendants, in that their employees and agents regularly overdetain persons who are subject to release.

72. The above-described widespread practices, which were so well settled as to constitute the *de facto* policy of the Defendants, were allowed to exist because policymakers with authority over these acts exhibited deliberate indifference to the problem, thereby effectively ratifying it.

73. The policies, practices, and customs set forth above were the driving force behind the numerous constitutional violations in this case that directly and proximately caused Plaintiff to suffer the grievous and permanent injuries and damages set forth above.

74. Furthermore, the widespread practices described in the preceding paragraphs were allowed to flourish because Defendants declined to implement sufficient training, sufficient policies, or any legitimate mechanism for oversight or punishment of officers and agents.

### Count 7 – *Respondeat Superior* (DPS&C and LeBlanc Only)

75. While committing the misconduct alleged in the preceding paragraphs, some Defendants and others were employees, members, and agents of Secretary LeBlanc and Warden Sumlin within the scope of their employment.

76. Defendants Secretary LeBlanc and Warden Sumlin are therefore liable as principals for all torts committed by their agents.

### Count 8 – Indemnification (DPS&C and LeBlanc Only)

77. Louisiana law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable for actions taken in the discharge of their duties that are within the scope of their employment activities.

78. While committing the misconduct alleged in the preceding paragraphs, some Defendants and others were employees, members, and agents of the DPS&C and Secretary LeBlanc within the scope of their employment.

79. Secretary LeBlanc and the DPS&C are therefore obligated by Louisiana statute to pay any judgment entered against their employees.

### Remedies

80. Petitioner requests a trial by jury.

81. Because of the above plead causes of action, Petitioner seeks the following:

   A. Declaratory relief;

   B. Compensatory damages;

C. Special/punitive damages;

D. Legal costs and attorneys fees;

E. A permanent injunction requiring Defendants to end their practice of overdetention;

F. Other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

82. Petitioner states any and all other causes of action may become known through a trial of this matter on its merits against any and all other parties which are herein named or which may be added later, and request any and all other damages or remedies which this court may deem equitable.

83. Petitioner reserves the right to notice of defect to this pleading and reserve the right to amend or supplement this Petition after discovery of any additional fact, law, or claim, the amendment of which to be performed by the filing of any subsequent pleading.

84. An amicable demand has been made on all Defendants.

WHEREFORE, Petitioner prays that Defendants be served with process of this Petition for Damages and duly cited to answer same, that after all legal delays and due proceedings are complete that there be judgment in favor of Petitioner and against Defendants, jointly and *in solido* for the full amount of Petitioners' damages, plus legal interest together with all costs incurred in this matter, and any other general or equitable relief that the court deems proper.

Respectfully Submitted,

*/s/ William Most*

William Most, Bar No. 36914
Law Office of William Most, L.L.C.
201 St. Charles Ave. Suite 114 #101
New Orleans, LA 70170
(504) 509-5023
williammost@gmail.com

PLEASE SERVE:

**Louisiana Department of Public Safety & Corrections** (via Rhonda Weldon), (225) 342-6743
504 Mayflower Street, Baton Rouge, LA 70802

**Secretary James LeBlanc**, (225) 342-6740
504 Mayflower Street, Baton Rouge, LA 70802

**Terry Lawson**
670 Bell Hill Road, (318) 927-0400
Homer, LA 71040

10

CERTIFIED TRUE AND CORRECT COPY

JAN 16 2019

East Baton Rouge Parish
Deputy Clerk of Court

*Note for Service*:    Rhonda Weldon at DOC HQ may be able to accept service on behalf of all defendants. Contact her at (225) 342-6743

*Note for Service*:    Rhonda Weldon at DOC HQ may be able to accept service on behalf of all defendants. Contact her at (225) 342-6743