**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

ELLIS RAY HICKS                                              CIVIL ACTION

VERSUS                                                       19-108-SDD-RLB

DEPARTMENT OF PUBLIC SAFETY &
CORRECTIONS, ET AL.

<u>**RULING**</u>

This matter is before the Court on the *Motion to Dismiss Pursuant to F.R.C.P. Rule 12(c)*[1] by Defendants, the Louisiana Department of Public Safety and Corrections ("DOC"), James LeBlanc ("LeBlanc"), and Terry Lawson ("Lawson")(or, collectively, "Defendants"). Plaintiff, Ellis Ray Hicks ("Plaintiff") has filed an *Opposition* to this motion.[2] For the following reasons, the Court finds that the Defendants' motion should be GRANTED in part and DENIED in part.

**I.    FACTUAL BACKGROUND**

This lawsuit arises out of a claim of over-detention of a prisoner. In his *Amended Complaint*, Plaintiff alleges that he was held in prison for two months beyond the date of his legal release.[3] Plaintiff claims that, on July 25, 2016, he was arrested in Louisiana for a parole violation, stemming from an arrest and incarceration in Arkansas for which Plaintiff had previously served 455 days in Arkansas' Faulkner County Jail.[4] On January 3, 2019, Plaintiff pled guilty to the parole violation, and he was sentenced to four years at

---

[1] Rec. Doc. No. 22.
[2] Rec. Doc. No. 27; Supplemental Brief, Rec. Doc. No. 41.
[3] Rec. Doc. No. 16.
[4] *Id.* at ¶ 18.
Document Number: 58636

hard labor, "which [was] the new underlying sentence," and he was to be given "credit for time served in Arkansas."[5]  Plaintiff served his sentence at the Claiborne Parish Detention Center.[6]

Plaintiff alleges that, on February 23, 2017, Lawson, a DOC employee at David Wade Correctional Center, calculated Plaintiff's sentence to be served until February 28, 2018, and this date most closely reflected Plaintiff's Judge-ordered sentence, which included credit for his time served in Arkansas.[7] However, Plaintiff alleges that Lawson re-calculated his sentence on March 10, 2017, removed his credit for time served, and changed his sentence to run until May 23, 2019, a date more than a year later than his original release date.[8]  When Plaintiff questioned this new release date, he alleges he was told by Brian Flynn, Claiborne Parish Clerk of Court, that the DOC would not give Plaintiff credit for time served "'without an official document from the State of Arkansas showing the credits that you are due.'"[9]  Plaintiff further claims that Lawson privately informed him that Lawson had decided that Plaintiff was not qualified to receive credit for time served, despite the clear language in his Judge-mandated sentence.[10]

Through the help of friends and family, on June 23, 2017, Plaintiff obtained a letter from the Arkansas Department of Corrections confirming his time served in Arkansas. This letter was copied to the Claiborne Detention Center, David Wade Correctional Center, and Brian Flynn.[11]  On July 3, 2017, Plaintiff alleges the letter regarding his

---

[5] *Id.* at ¶ 19.
[6] *Id.*
[7] *Id.* at ¶ 20.  Plaintiff claims this date would still have resulted in an over-detention of four days.
[8] *Id.* at ¶ 21.
[9] *Id.* at ¶ 22.
[10] *Id.* at ¶ 23.
[11] *Id.* at ¶ 24.
Document Number: 58636

Arkansas credit was sent to Lawson, who recalculated Plaintiff's sentence again, this time arriving at a release date of January 8, 2018.[12]

Despite this recalculation, Plaintiff remained concerned that he was not receiving proper time-served credit, so Plaintiff filed a motion to clarify the record on July 11, 2017, seeking that "the record reflect[] that Ellis was sentenced to four years, with credit for time served in Arkansas."[13]   On August 15, 2017, the sentencing judge again ordered that Plaintiff's sentence be "'four (4) years at hard labor with credit for all time served, including the time served in the State of Arkansas.'"[14]   Plaintiff claims this order was sent to David Wade Correctional Center on September 8, 2017.[15]   In response to this order, Lawson allegedly again recalculated Plaintiff's sentence, arriving at a release date of July 11, 2018.[16]

Plaintiff alleges that Lawson repeatedly altered his release date in retaliation for Plaintiff's continued pursuit of the correct release date, made by himself and his friends and family, because Lawson allegedly considered this "messing" with him (Lawson).[17] Undeterred, Plaintiff filed an Administrative Remedy Procedure ("ARP") on January 5, 2018, regarding Lawson's alleged refusal to consider Plaintiff's time-served credit.[18] Then, on January 10, 2018, Plaintiff filed a motion to enforce the Judge's order, and on January 12, 2018, the Judge ordered a hearing on the matter.[19]

---

[12] *Id.* at ¶ 25.
[13] *Id.* at ¶ 26.
[14] *Id.* at ¶ 28.
[15] *Id.*
[16] *Id.* at ¶ 29.
[17] *Id.* at ¶¶ 30-31.
[18] *Id.* at ¶ 32.
[19] *Id.* at ¶ 33.

Document Number: 58636

Plaintiff alleges that, on February 6, 2018, a habeas hearing was held, in which the District Attorney and Judge confirmed that Plaintiff's original sentence included time served in Arkansas; however, the Judge advised Plaintiff that she could do nothing else to help him, and he needed to file a lawsuit in Baton Rouge against the DOC.[20]  Plaintiff continued to vigorously pursue relief regarding his release date,[21]  and he maintains that he was illegally detained beyond his February 24, 2018 release date.[22]

Plaintiff obtained counsel, and on April 17, 2018, Plaintiff alleges his attorney contacted Lawson to inquire why Plaintiff had not been released.[23]  Plaintiff further alleges that, during a recorded phone call, Lawson advised Plaintiff's counsel that "judges have no say whatsoever to us applying our time comp laws[.]"[24]  Plaintiff claims that Lawson advised his counsel that Plaintiff was only getting 904 days of credit, which did not account for any time served in Arkansas.[25]  Ultimately, Plaintiff was released on April 25, 2018, allegedly sixty days beyond his legal release date.[26]

Plaintiff also alleges that the DOC has a well-documented and acknowledged pattern of over-detention.[27]  Plaintiff maintains that Attorney General Jeff Landry acknowledged this problem in an op-ed published March 8, 2018, wherein he conceded "that there 'is a layer of incompetence so deep that the Corrections Department doesn't know where a prisoner is on any given day of the week or when he should actually be

---

[20] *Id.* at ¶ 34.
[21] *Id.* at ¶¶ 35-37.
[22] *Id.* at ¶ 38.
[23] *Id.* at ¶ 41.
[24] *Id.* at ¶ 42.
[25] *Id.* at ¶¶ 43-44.
[26] *Id.* at ¶ 46.
[27] *Id.* at ¶ 48.

Document Number: 58636

released from prison.'"[28]  Plaintiff provided detailed allegations regarding the findings of the Louisiana Legislative Auditor who audited the DOC and highlighted this problem, among others.[29]

Plaintiff filed this lawsuit pursuant to 42 U.S.C. § 1983, asserting that the Defendants violated his federal constitutional Fourteenth Amendment due process and First Amendment free speech rights and asserting a *Monell* failure to train/supervise claim against the DOC and LeBlanc.  Defendants LeBlanc and Lawson are sued in both their official and individual capacities.[30]  Plaintiff also asserted state law claims of false imprisonment, negligence, *respondeat superior*, indemnification, and a violation of Plaintiff's rights under the Louisiana Constitution.[31]  Defendants have moved to dismiss Plaintiff's federal claims, arguing that some claims are barred by Eleventh Amendment sovereign immunity, and all others are barred by *Heck v. Humphrey*.[32]  Defendants also assert the defense of qualified immunity for the individual capacity claims asserted. Plaintiff opposes this motion.

## II.    LAW & ANALYSIS

### A.  Motion to Dismiss Under Rule 12(b)(6) and Rule 12(c)

According to Rule 12(c) of the Federal Rules of Civil Procedure: "After the pleadings are closed–but early enough not to delay trial–a party may move for judgment

---

[28] *Id.* at ¶ 49 (quoting Sen. John Kennedy and Atty. Gen. Jeff Landry, Criminal justice reform actually hurting public safety, The Advocate (Mar. 8, 2018)).
[29] *Id.* at ¶¶ 50-61.
[30] *Id.* at ¶¶ 13-14.
[31] *Id.* at ¶¶ 63-95.
[32] 512 U.S. 477 (1994).
Document Number: 58636

on the pleadings."[33] "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)."[34]

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[35]  The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[36]  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[37]  In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[38]  A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[39]  However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[40]  In order to satisfy the plausibility standard, the plaintiff must show "more than

---

[33] Fed. R. Civ. P. 12(c).

[34] *Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 209 (5th Cir. 2009) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)).

[35] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

[36] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[37] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205.

[38] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter "*Twombly*").

[39] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "*Iqbal*").

[40] *Twombly*, 550 U.S. at 556.

Document Number: 58636

a sheer possibility that the defendant has acted unlawfully."[41]   "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[42]   On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[43]  Rather, the inquiry is whether the allegations in the *Complaint* plausibly state a claim for relief.

### B. Eleventh Amendment Sovereign Immunity

Defendants maintain that any Section 1983 claims brought against them for money damages, against the DOC and against Leblanc and Lawson in their official capacities, are barred by Eleventh Amendment sovereign immunity.  Plaintiff argues that Defendants waived the defense of sovereign immunity when they removed this case to federal court.

A suit against a state official or employee in his or her official capacity is actually a suit against the state itself.[44] The Eleventh Amendment bars a state's citizens from filing suit against the state in federal court unless the state has waived its immunity.[45] Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal court.[46]  However, where a state removes a case to federal court, the state may be found to have waived this defense.

Additionally, the doctrine of sovereign immunity does permit an exception for claims of declaratory or prospective injunctive relief: "Under *Ex Parte Young*, a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their

---

[41] *Iqbal*, 556 U.S. at 678.

[42] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

[43] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[44] *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

[45] *See Cozzo v. Tangipahoa Parish Council–President Government*, 279 F.3d 273, 280 (5th Cir. 2002).

[46] *See* La. R. S. § 13:5106(A).

Document Number: 58636

future conduct to the requirements of federal law."[47]   Nevertheless, Defendants herein have moved to dismiss only Plaintiff's claims for money damages brought under Section 1983.  Defendants do not address Plaintiff's claims for declaratory relief and permanent injunctive relief.[48]  Defendants are correct that Section 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen as "persons" within the meaning of Section 1983.[49] In addition, in *Hafer v. Melo*,[50] the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment.[51]

Plaintiff's reliance on the Supreme Court's decision in *Lapides v. Board of Regents of Univ. System of Ga.*[52] and the Fifth Circuit's decision in *Meyers ex rel. Benzing v. Texas*[53] is misplaced.  In *Lapides*, the Supreme Court held that "removal is a form of voluntary invocation of a federal court's jurisdiction" that constitutes "a waiver of a state's immunity from suit."[54]  While this is true, another Section of this Court analyzed this issue in *Williams v. Louisiana*:[55]

> In *Lapides*, the Supreme Court "agreed to decide whether a state waives its Eleventh Amendment immunity by its affirmative litigation conduct when it removes a case to federal court[,]" at least in "the context of state-law

---

[47] *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) (citation omitted).
[48] *See* Rec. Doc. No. 16, ¶ 96 (A) & (E).
[49] *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).
[50] 502 U.S. 21 (1991).
[51] *Id.* at 25.
[52]  535 U.S. 613 (2002).
[53] 410 F. 3d 236 (5th Cir. 2005).
[54] *Id.* at 243 (citing *Lapides*).
[55] 2019 WL 1003645 (M.D. La. Feb. 28, 2019).
Document Number: 58636

claims, in respect to which the State has explicitly waived immunity from state-court proceedings." *Lapides*, 535 U.S. at 617, 122 S.Ct. at 1643 (quotations and alterations omitted). The Court concluded that "the State's action joining the removing of this case to federal court waived its Eleventh Amendment immunity[.]" *Id.*, 535 U.S. at 624, 122 S.Ct. at 1646. The *Lapides* Court further explained: "where a State voluntarily becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment." *Id.*, 535 U.S. at 619, 122 S.Ct. at 1644 (quoting *Gunter v. Atlantic Coast Line R. Co.*, 200 U.S. 273, 284, 26 S.Ct. 252, 50 L.Ed. 477 (1906) (emphasis added by *Lapides*)).

Although *Lapides* was limited to state-law claims, the Fifth Circuit in *Meyers ex rel. Benzing* extended the waiver of sovereign immunity by removal of private suits by the state on federal law claims constitutes a valid waiver of the state's sovereign immunity. *Meyers ex rel. Benzing*, 410 F.3d at 248; *see also Skinner v. Gragg*, 650 F. App'x 214, 218 (5th Cir. 2016). Further, the Fifth Circuit has applied this removal principal to § 1983 claims. *Spooner v. Jackson*, 251 F. App'x 919, 924 (5th Cir. 2007). Therefore, Louisiana's removal of this suit to federal court constitutes a waiver of its sovereign immunity.

However, the inquiry does not end there because in *Meyers ex rel. Benzing* the Fifth Circuit recognized that "a sovereign enjoys two kinds of immunity that it may choose to waive or retain separately—immunity from suit and immunity from liability." *Id.* at 252–53. The Fifth Circuit found "that the Constitution permits and protects a state's right to relinquish its immunity from suit while retaining its immunity from liability, or vice versa, but that it does not require a state to do so." *Id.* at 255. Ultimately in *Meyers* the Court found that Texas waived its immunity from suit in federal court by removing a case involving state and federal claims from state court to federal court. *Id.* at 256. However, the Court left the question of whether Texas waived its immunity from liability to be further determined "according to that state's law." *Id.* at 255.

The Fifth Circuit further clarified *Meyers* on rehearing by stating, "[w]hen a State removes to federal court a private state court suit based on a federal-law claim, it invokes federal jurisdiction and thus waives its unqualified right to object peremptorily to the federal district court's jurisdiction on the ground of state sovereign immunity." *Meyers ex rel. Benzing v. Texas*, 454 F.3d 503 (5th Cir. 2006) *aff'g on reh'g*, 410 F.3d 236. However, the Court clarified, "**that waiver does not affect or limit the State's ability to assert whatever rights, immunities or defenses are provided for by its own sovereign immunity law to defeat the claims against the State finally and on their merits in the federal courts**." Therefore, Louisiana's removal

to federal court waived its immunity from suit in regards to the official capacity § 1983 claims, but the State may still prove that it has immunity from liability on these claims.[56]

Next, the Court considered whether the DOC and Louisiana Board of Parole were

"persons" under Section 1983:

> Having found that the State has waived its Eleventh Amendment immunity by voluntarily removing this suit to federal court, the Court must now determine whether the Department of Public Safety and Corrections and the Louisiana Board of Parole are "persons" within the meaning of 42 U.S.C. § 1983.
>
> "Section 1983 provides a private right of action for damages to individuals who are deprived of 'any rights, privileges, or immunities' protected by the Constitution or federal law by any 'person' acting under the color of state law." *Stotter v. Univ. of Texas at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007) (quoting 42 U.S.C. § 1983). "The Supreme Court has 'held that a State is not a 'person' against whom a § 1983 claim for money damages might be asserted.'" *Med. RX/Sys., P.L.L.C. v. Texas Dep't of State Health Servs.*, 633 F.App'x 607, 610 (5th Cir. 2016) (citing *Lapides*, 535 U.S. at 617, 122 S.Ct. 1640). "This rule extends to 'arms of the state,' and to a state's 'officials acting in their official capacities.'" *Id.* (citing *Howlett v. Rose*, 496 U.S. 356, 365, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). Thus, Plaintiff's § 1983 claims are barred against Defendants in their official capacity as they are not considered "persons" within the meaning of 42 U.S.C. § 1983.

The same argument Plaintiff advances in this case was also rejected by the district

court for the Eastern District of Louisiana in *Traweek v. Gusman*,[57] a case upon which

Plaintiff heavily relies on other points of law.  In *Traweek*, the DOC and LeBlanc were

named as defendants in a suit claiming over-detention by an inmate.  The Defendants

asserted the Eleventh Amendment sovereign immunity defense as to Traweek's claims

---

[56] *Id.* at *3-*4 (emphasis added).
[57] 2019 WL 5430590 (E.D. La. Oct. 23, 2019).
Document Number: 58636

for money damages.[58]  The *Traweek* court employed the same analysis set forth above

in *Williams*, and held:

> The Eleventh Amendment bar to suits by private citizens against a state in federal court extends to protect state actors who are acting in their official capacities. *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010)(citing *Hutto v. Finney*, 437 U.S. 678, 700, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978)); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 61, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)(A suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment.).
>
> There is a narrow exception to this immunity from suit: the *Ex parte Young* exception, which "is based on the legal fiction that a sovereign state cannot act unconstitutionally[; t]hus, where a state actor enforces an unconstitutional law, he is stripped of his official clothing and becomes a private person subject to suit." *See K.P. v. LeBlanc*, 627 F.3d at 124 (emphasis added)(citing *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)(noting "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State'").
>
> *Ex parte Young* thus limits the plaintiff to prospective relief and bars money damages. *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002). To determine whether *Ex parte Young*'s mandate is satisfied, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *See id.* (internal quotation marks and citations omitted)(alteration in original); *see also Delaughter v. Woodall*, 909 F.3d 130, 137 (5th Cir. 2018).
>
> Here, it is undisputed that the plaintiff seeks only money damages against LeBlanc and Jones in their official capacities as Secretary and employee of the State Department of Public Safety and Corrections; LeBlanc and Jones have thus permissibly invoked sovereign immunity and *Ex parte Young* is not implicated. Mr. Traweeks's claims against LeBlanc and Jones in their official capacities must be dismissed as barred by the Eleventh Amendment.

---

[58] *Id.* at *4.
Document Number: 58636

Accordingly, to the extent that Plaintiff asserts Section 1983 claims for monetary damages against Defendants in their official capacities, those claims are dismissed with prejudice.[59]

### C. The *Heck v. Humphrey* Doctrine

Defendants also move to dismiss Plaintiff's claims, arguing that the *Heck v. Humphrey* doctrine bars Plaintiff's claims because they bear on both the validity and duration of his confinement.  In *Heck*, the Supreme Court held that a convicted person cannot collect damages for an unconstitutional conviction or imprisonment under Section 1983 unless "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ..., or called into question by a federal court's issuance of a writ of habeas corpus."[60]  Such a complaint must be dismissed if a "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."[61]  Plaintiff maintains that he does not, in any way, challenge his underlying conviction or sentence, and this *Heck* argument has been rejected by Louisiana district courts.  Plaintiff is correct.

This Court rejected the same arguments raised by the DOC and LeBlanc in *Thomas v. Gryder*.[62]  The Court explained:

> The "favorable termination" requirement of Heck prohibits a criminal defendant's collateral attack on the defendant's conviction or sentence.[63] Here, however, Plaintiff does not seek to collaterally attack either his conviction or his sentence. Instead, all parties agree that on January 23,

---

[59] As no party addressed the viability of Plaintiff's claims for declaratory and prospective injunctive relief under the law, the Court declines to make a finding on this issue and cannot dismiss these claims based on this motion.

[60] 512 U.S. at 486-87.

[61] *Id.* at 487.

[62] 2019 WL 5790351 (M.D. La. Nov. 6, 2019).

[63] *Id.* at *5 (citing *Heck*, 512 U.S. at 484-485 ("This Court has long expressed similar concerns for finality and consistency and has generally declined to expand opportunities for collateral attack.")).

Document Number: 58636

2013, Plaintiff pleaded guilty in Orleans Criminal District Court and was sentenced as follows: (1) Count 1: sexual malfeasance in prison – five years; (2) Count 2: sexual battery – two years; and (3) Count 3: second degree kidnapping – five years.[64] The parties further agree that Plaintiff's correct release date was June 5, 2015.[65] Nothing in the instant action would invalidate either Plaintiff's conviction or sentence,[66] and Defendants cite the Court to no cases in which the unique fact pattern at issue here was considered.[67] Accordingly, the Court finds that Plaintiff's claims are not *Heck* barred.[68]

---

[64] *Id.* (citing R. Doc. 62-1, p. 1).

[65] *Id.* (citing *supra*, n. 22).

[66] *Id.* (citing *e.g., Chappelle v. Varano*, 4:11-cv-00304, 2013 WL 5876173, at * 13 (M.D. Pa. Oct. 30, 2013) (plaintiff's § 1983 action for damages where parole board recalculated plaintiff's maximum sentence to be July 14, 2009 and defendants released plaintiff on either July 30 or 31, 2009 was not barred by *Heck* because "the Plaintiff does not dispute the validity of his conviction or his corresponding sentence at all. The conflict centers on the amount of time he was held in excess of his valid conviction and sentence. The disputed period of confinement is both temporally and legally separate from the Plaintiff's actual conviction and sentence. A finding for Plaintiff under § 1983 based on the period he was held beyond his original sentence would not imply the invalidity of the conviction or sentence, and therefore does not trigger the application of the favorable termination rule.") (internal citation omitted); *Griffin v. Allegheny County Prison*, Civil Action No. 17-1580, 2018 WL 6413156, at * 4 (W.D. Pa. Nov. 5, 2018) (same)).

[67] *Id.* (citing R. Doc. 65, pp. 2-3, n. 10-12. Defendants cite cases in which a claimant was currently imprisoned and sought immediate release or damages based on alleged constitutional violations. Defendants also cite cases involving § 1983 actions by formerly incarcerated individuals based on alleged imprisonment longer than was proper which were barred by *Heck*. *See, Whitehurst v. Reece*, Civil Action No. 1:06cv393, 2009 WL 2757203 (E.D. Tex. Aug. 26, 2009) (formerly incarcerated plaintiff sought damages based on allegation that he was imprisoned longer than he should have been because defendants took improper actions which prevented him from receiving credit towards his federal sentence for time he spent incarcerated in county jail); *Humphrey v. Stephens*, No. A-14-CA-231-LY, 2014 WL 1319188 (W.D. Tex. March 31, 2014) (former prisoner's 1983 action dismissed as *Heck*-barred where plaintiff alleged that defendants miscalculated his release date and thereby over-detained him by 14 days); *Carlisle v. Normand*, Civil Action No. 16-3767, 2017 WL 4918997 (E.D. La. Oct. 31, 2017) (plaintiffs challenged the manner in which drug court was conducted and alleged excessive sentences were imposed; "Plaintiffs allege that Drug Court violated their constitutional rights by imprisoning them without due process, in the form of probation sanctions, contempt convictions, and time spent waiting. An award of damages to compensate for either the confinement itself or the alleged violations of due process that led to the confinements would necessarily imply that the confinements were invalid. *Heck* requires Plaintiffs to assert the invalidity of the confinements elsewhere before suing for damages."). Plaintiff's suit here does not involve any challenge to his conviction or sentence (because all parties agree on Plaintiff's conviction and proper sentence). Instead, Plaintiff seeks damages for the time period after his conviction and sentence (i.e., the amount of time Plaintiff was held in excess of his valid conviction and sentence), a time period for which *Heck* is not implicated. *See, Heck*, 512 U.S. at 487 ("But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed...."). *See also, Traweek*, 2019 WL 5430590, at * 6 (finding no *Heck* bar where plaintiff challenged "neither his conviction nor the length of his sentence" and instead alleged constitutional violations based on "his jailers' failure to timely process his release following his court-ordered time-served judgment."), and at * 5 ("The constitutional violation he advances here is that he was imprisoned 20 days past his release date; he does not take issue with his criminal judgment or the sentence rendered, but, rather, challenges the constitutionality of the administration of his release after he had served his sentence.")).

[68] *Thomas v. Gryder*, 2019 WL 5790351, at *3-*4.

Document Number: 58636

The *Traweek* court reached the same conclusion:

> By seeking to impose the *Heck* procedural bar to Mr. Traweek's claims, the defendants emphasize form over substance, begin from a faulty assumption, and ignore a critical component of *Heck* that is absent here. If Mr. Traweek succeeds on the merits, neither his underlying conviction for aggravated battery nor his seven-month sentence will be impliedly invalidated. *See id.* at 486, 114 S.Ct. 2364 (the favorable termination rule does not bar a § 1983 suit when "the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff."). Here, Mr. Traweek challenges neither his conviction nor his sentence. He accepts both. Therefore, the reasoning underlying *Heck*'s favorable termination prerequisite is simply not implicated: it would be illogical to require Mr. Traweek to first seek to invalidate his conviction or sentence in order to proceed in this lawsuit. The constitutional violation he advances here is that he was imprisoned 20 days past his release date; he does not take issue with his criminal judgment of conviction or the sentence rendered, but, rather, challenges the constitutionality of the administration of his release after he had served his sentence. Mr. Traweek alleges that his jailers failed to timely release him once the legal basis to incarcerate him had expired by court order. The only conduct the factfinder will probe is that performed by jail officials in administering his release after his release date.

> Another Section of this Court has rejected Secretary LeBlanc's attempt to invoke Heck in a factually-similar overdetention context, *Grant v. Gusman*, 17-cv-02797, R. Doc. 46 (E.D. La. March 27, 2018)(Brown, C.J.). There, the plaintiff, who had served seven years in state custody, was arrested upon his release based on a warrant issued years earlier for a different crime predating the one for which he served the seven-year prison term. The plaintiff pled guilty and the state court sentenced him to "a one year sentence, with credit for time served for the seven years he had just served." *Id.* at 3. Like Mr. Traweek, an administrative logjam between OPSO and DOC caused the plaintiff to be detained an additional 27 days after his sentencing, notwithstanding the state trial court's order (and the judge's email directly to OPSO's attorney directing) that Grant's release be expedited. *Id.* at 3-5. In moving to dismiss Grant's § 1983 claims, Secretary LeBlanc also invoked *Heck*. Chief Judge Brown rejected the argument, noting "[p]laintiff does not argue that his conviction or sentence were invalid.... [H]e contends that DOC Defendants violated his constitutional rights by failing to release him from prison. Therefore, *Heck v. Humphrey* is not applicable to this case." *Id.* at 32. This reasoning applies equally to Mr. Traweek, who, like Grant, challenges neither his conviction nor the length of his court-ordered sentence; he simply alleges that the overdetention by

his jailers' failure to timely process his release following his court-ordered time-served judgment exceeds constitutional bounds.

Mr. Traweek's lawsuit, if successful, will not demonstrate or imply the invalidity of any criminal judgment or court-imposed sentence. He simply alleges that the procedures and action (or inaction) that caused him to be incarcerated for 20 days longer than his criminal judgment permitted unconstitutionally deprived him of his right to due process. *Heck*'s procedural bar is patently inapplicable.[69]

Based on the foregoing, the Court finds that *Heck v. Humphrey* does not bar Plaintiff's claims relating to his alleged over-detention.  Defendants' motion is DENIED on this issue.

### D. Qualified Immunity

Finally, LeBlanc and Lawson assert the defense of qualified immunity for the individual capacity claims brought against them.  In *Harlow v. Fitzgerald*, the United States Supreme Court established the principle that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[70] "When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense."[71]

A claim of qualified immunity requires the Court to engage in the well-established two-step analysis developed by the Supreme Court in *Saucier v. Katz*.[72]  As stated by the

---

[69] 2019 WL 5430590, at *5-*6 (internal footnotes omitted).
[70] 457 U.S. 800, 818 (1982).
[71] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*)).
[72] 533 U.S. 194 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 229 (2009). *See Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009).
Document Number: 58636

Fifth Circuit in the context of a motion for summary judgment:

> First, we determine whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights. *See, e.g., Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005); *McClendon v. City of Columbia*, 305 F.3d 314, 322–23 (5th Cir.2002) (*en banc*); *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001). If not, our analysis ends. If so, we next consider whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *See, e.g., Tarver*, 410 F.3d at 750; *Glenn*, 242 F.3d at 312. To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions. *See Glenn*, 242 F.3d at 312; *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000); *see also Tarver*, 410 F.3d at 750 ("If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact.").[73]

When the defense of qualified immunity is raised in a Rule 12(b)(6) motion, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness'."[74]  The plaintiff must support his claim with "sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts."[75]  When greater detail is required to address the defense of qualified immunity, the Court may insist that a plaintiff file a reply pursuant to Federal Rule of Civil Procedure 7(a) tailored to an answer pleading the defense of qualified immunity.[76] "The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts."[77]

---

[73] *Freeman v. Gore*, 483 F.3d 404, 410–11 (5th Cir. 2007).

[74] *McClendon*, 305 F.3d at 323 (quoting *Behrens v. Pelletier*, 516 U.S. 299 (1996)).

[75] *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir.1995) (*en banc*).

[76] *Id.* at 1433–34.

[77] *Id.*

Document Number: 58636

Defendants make essentially the same *Heck* argument discussed above in asserting their entitlement to qualified immunity.  Defendants also maintain that Plaintiff has failed to allege that a clearly established constitutional right was violated.  The Court disagrees.

The *Traweek* court explained the meaning of "clearly established":

This is a "demanding standard," which requires "precedent [so] clear...that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *District of Columbia v. Wesby*, —— U.S. ——, 138 S. Ct. 577, 589, 199 L.Ed.2d 453 (2018)(citations omitted, emphasis added). "Clearly established" law is "settled law" that "place[s] the constitutionality of the officer's conduct 'beyond debate.'" *Id.* (citation omitted). Although the Supreme Court does not require "a case directly on point," the legal principle must be specific, not general, and either "controlling authority" has adopted the rule, or there is "a robust consensus of cases of persuasive authority" embracing it. *Id.* at 589-90 (citation omitted). Stated another way, "[a] [g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he [or she] is doing violates that right.'" *al-Kidd*, 563 U.S. at 741, 131 S.Ct. 2074 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). This demanding second prong thus ensures that "government officials [have] breathing room to make reasonable but mistaken judgments about open legal questions." *Id.* at 743, 131 S.Ct. 2074. Indeed, "the qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)(quoting *Malley v. Briggs*, 475 U.S. 335, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).[78]

\*\*\*

The Fourteenth Amendment forbids states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "The touchstone of due process is protection of the individual against arbitrary action of government." *Jauch v. Choctaw Cty.*, 874 F.3d 425, 430 (5th Cir. 2017)(quoting *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). "The procedural due process analysis starts with one inquiry: whether the state has 'deprived the individual of a

---

[78] 2019 WL 5430590, at \*7.
Document Number: 58636

protected interest[.]'" *Id.* Quite obviously, the Supreme Court has recognized that the "loss of personal liberty through imprisonment" is sufficient to trigger due process protections. *Id.* (quoting *Turner v. Rogers*, 564 U.S. 431, 445, 131 S.Ct. 2507, 180 L.Ed.2d 452 (2011)).[79]

Mr. Traweek alleges that LeBlanc's failure to adopt safeguards despite knowing DOC's pattern of overdetaining inmates and Jones's direct failure to timely process his release despite knowing he was overdue to be released violated his right to timely release from custody. Because Mr. Traweek has a right to be timely released from custody, his over detention, or detention absent (or beyond the expiration of) legal process, violates an incarcerated person's right to due process. *See id.*[80]

The *Traweek* court also noted, based on Fifth Circuit precedent, that "[t]here is no dispute that an incarcerated person's right to timely release from custody is clearly established and was so, well before 2018 at the time that Traweek remained in custody despite the court order mandating his release."[81]  The court discussed the Fifth Circuit's decision in *Jauch v. Choctaw Cty.*,[82] wherein the Fifth Circuit determined that Jauch's 96-day detention without a hearing deprived her of liberty without legal or due process, and the Fifth Circuit further determined that this law had been clearly established in *Jones v. City of Jackson*, a case decided in February 2000.[83]  Thus, the *Jauch* court denied qualified immunity to the sheriff in whose custody the plaintiff remained for 96 days.[84]

Having determined that "there is a clearly established right to timely release from prison,"[85] and accepting his allegations as true as required under Rule 12(b)(6), the court found that Traweek had plausibly alleged the violation of a constitutional right by the

---

[79] *Id.*  at *8 (internal footnote omitted).
[80] *Id.*
[81] *Id.* (citation omitted).
[82] 874 F.3d 425, 430 (5th Cir. 2017).
[83] 203 F.3d 875 (5th Cir. 2000).
[84] *Jauch*, 874 F.3d at 436 (finding that the sheriff's attempt to shift blame to immune judicial officers was misdirected given that sheriff's actions and decisions caused constitutional injury: "[e]ither Sheriff Halford is plainly incompetent, or he knowingly violated the law.").
[85] *Traweek*, 2019 WL 5430590, at *10 (quoting *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011)).
Document Number: 58636

defendants.  The court also held that Traweek had alleged sufficient facts to overcome

the defendants' qualified immunity defense at the pleadings stage.[86]    The court

documented Traweek's specific allegations regarding the computation process applied to

his particular case but also found that Traweek's allegations that LeBlanc and the DOC

"have 'a well-documented pattern of overdetention'" overcame LeBlanc's defense:[87]

> LeBlanc's § 1983 individual capacity liability is predicated solely on his
> supervisory role as Secretary of DOC; there are no allegations that he
> affirmatively participated in the acts that caused Mr. Traweek's
> constitutional deprivation. Thus, LeBlanc is only liable under § 1983 if Mr.
> Traweek plausibly alleged that he implemented unconstitutional (or failed to
> implement) policies that causally resulted in his overdetention. Mr. Traweek
> contends that his pattern allegations overcome LeBlanc's assertion of
> qualified immunity and that another Section of this Court has determined
> that similar allegations suffice to allege a pattern of overdetention at the
> DOC of which LeBlanc was aware but nonetheless acted with deliberate
> indifference by failing to discipline or train employees or to implement any
> policy to correct the unconstitutional problem. *See Grant v. Gusman*, No.
> 17-2792, 2018 WL 3869494, at *10 (E.D. La. Aug. 14, 2018)(Brown, C.J.).
> The Court agrees. Mr. Traweek's allegations regarding DOC's pattern of
> overdetention and LeBlanc's deliberate failure to act or implement policies
> addressing the overdetention problem suffice to overcome LeBlanc's
> invocation of qualified immunity. Mr. Traweek alleges that the DOC's
> system of administrative processing, in practice, amounts to a policy of
> deliberate indifference. It is alleged that LeBlanc has known about the
> DOC's pattern of overdetention for years and yet has failed to adopt policies
> to correct this problem and that this failure to adopt training or disciplinary
> policies to address it constitutes deliberate indifference to MR. Traweek's
> constitutional right to timely release. Mr. Traweek also alleges that,
> consistent with the known delays inherent in processing releases at DOC,
> it took DOC four days to even begin "computing" Traweek's time and then
> another day to effect his release. This suffices to overcome LeBlanc's
> invocation of qualified immunity at the pleadings stage.[88]

Applying the reasoning and analysis in *Traweek*, which involves a similar fact

pattern and nearly identical defense assertions, the Court must deny Defendants' motion

---

[86] *Id.* at *11.
[87] *Id.*
[88] *Id.*
Document Number: 58636

to dismiss based on qualified immunity.  Notably, unlike the jailer in *Traweek*, in the present case, Defendants make no argument that their actions were objectively reasonable or made in good faith.  Rather, Defendants focus solely on the argument that Plaintiff has failed to demonstrate the violation of a clearly established constitutional right, an argument that is clearly wrong under the wealth of Fifth Circuit jurisprudence discussed above.

Further, Plaintiff herein has alleged specific facts that, if proven, would allow an inference that LeBlanc and/or Lawson are liable under Section 1983.  The allegations of a well-known pattern or practice of over-detention by the DOC are detailed and specific.[89]  Plaintiff's allegations of Lawson's bad faith are likewise satisfactory to overcome Lawson's assertion of qualified immunity.   Plaintiff alleges that Lawson's conduct regarding the computation of his release date was in retaliation for Plaintiff's continued pursuit of the correct release date, which Lawson allegedly took personally.[90]  Lawson's potential bad faith is further implicated by Plaintiff's allegation that, based on a recorded phone call between Lawson and Plaintiff's attorney, Lawson advised Plaintiff's counsel that "judges have no say whatsoever to us applying our time comp laws[.]"[91]

Accordingly, Defendants LeBlanc and Lawson are not entitled to dismissal at this stage based on the defense of qualified immunity.

---

[89] *See* Rec. Doc. No. 16, ¶¶ 48, 50-61.
[90] *Id.* at ¶¶ 30-31.
[91] *Id.* at ¶ 42.
Document Number: 58636

### III.    CONCLUSION

For the reasons set forth above, Defendants' *Motion to Dismiss Pursuant to F.R.C.P. Rule 12(c)*[92] is GRANTED in part and DENIED. Plaintiff's official capacity claims for monetary damages against Defendants are hereby DISMISSED with prejudice.  All other claims remain pending before the Court.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>January 27, 2020</u>.

*Shelly D. Dick*

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[92] Rec. Doc. No. 22.
Document Number: 58636