## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ELLIS RAY HICKS** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 19-108-SDD-RLB** |
| | * | |
| **LOUISIANA DEPARTMENT OF PUBLIC** | * | **CHIEF JUDGE DICK** |
| **SAFETY AND CORRECTIONS, JAMES** | * | |
| **LEBLANC, AND TERRY LAWSON** | * | **MAG. JUDGE BOURGEOIS** |

**************************************************************************

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS TRACY DIBENEDETTO, ANGELA GRIFFIN, AND SALLY GRYDER

**MAY IT PLEASE THE COURT,**

Defendants Tracy Dibenedetto, Angela Griffin, and Sally Gryder herein move to dismiss the claims against them.

### I.    Legal Standards

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.,* at 557, 127 S.Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

Qualified immunity may be presented on a Motion to Dismiss. *Id.* The *Heck* bar may also be raised on a Motion to Dismiss. *Colvin v. LeBlanc*, 2 F.4th 494 (5th Cir. 2021).

1

Shotgun pleadings are "imprecise complaints that fail 'to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'" *Garig v. Travis*, No. CV 20-654-JWD-RLB, 2021 WL 2708910, at *17 (M.D. La. June 30, 2021) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015)). In *Weiland*, the Eleventh Circuit identified four types of "shotgun pleadings". *Id.*

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Garig* (quoting *Weiland,* 792 F.3d at 1321–23). Plaintiff's Second Amended Complaint has elements of all four types of shotgun pleadings. Shotgun pleadings violate Rule 8's pleading requirements. *Williams v. Am. Com. Lines, Inc.*, No. CV 20-139-SDD-EWD, 2020 WL 4574515, at *4 (M.D. La. July 23, 2020), *report and recommendation adopted,* No. CV 20-139-SDD-EWD, 2020 WL 4572338 (M.D. La. Aug. 7, 2020) (citing *Moore v. Mississippi Gaming Commission*, No. 15-13, 2015 WL 13019615, (N.D. Miss. Nov. 2, 2015)).

> Vague, imprecise "shotgun" pleading clouds the legal and factual issues in a case. At best, it indicates an attorney's failure to fully analyze the case and adopt a coherent defense or theory of liability. At worst, it constitutes intentional obfuscation. Regardless of the attorney's motivation, it escalates the cost of litigation for both the parties and the Court, requiring voluminous discovery and motions to pinpoint the specific issues for trial—a task that Rule 11 requires attorneys to perform, to some degree, before they file a pleading. *See* FED.R.CIV.P. 11(b)(2).

*Payne v. Univ. of S. Mississippi*, No. 1:12-CV-41-KS-MTP, 2015 WL 1482636, at \*5 (S.D. Miss. Mar. 31, 2015), *on reconsideration in part,* No. 1:12-CV-41-KS-MTP, 2015 WL 3549862 (S.D. Miss. June 5, 2015). "Shotgun complaints are subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Copeland v. Axion Mortg. Grp. LLC*, No. 1:16CV159-HSO-JCG, 2016 WL 4250431, at \*4 (S.D. Miss. Aug. 11, 2016) (citing *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126–27 (11th Cir. 2014)).

## II. *Heck v. Humphrey* bars the §1983 claims in this lawsuit and, correspondingly, Plaintiff's failure to have his sentence computation invalidated through CARP bars his state law claims.

A convicted felon, regardless of whether he is incarcerated at the time he files suit, is barred from filing suit under 42 U.S.C. §1983 challenging "the State's calculation of time to be served in accordance with the underlying sentence" unless the calculation has been reversed, modified, or set aside. *Muhammad v. Close*, 540 U.S. 749, 754-755, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004) (citing *Heck v. Humphrey,* 511 U.S. 477, 114 S.Ct. 2364 (1994)). Under Louisiana law, regardless of whether he is incarcerated at the time he files suit, a convicted felon cannot file a lawsuit claiming an erroneous sentence computation caused him harm unless the sentence computation was reviewed and resolved in his favor through the Corrections Administrative Remedy Procedure (CARP).[1] *Madison v. Ward*, 2000-2842 (La. App. 1 Cir. 7/3/02), 825 So. 2d 1245, 1255. The Plaintiff, Ellis Hicks, is indisputably pursuing §1983 and state law claims challenging DPSC's calculation of time he was to serve in accordance with his underlying sentence. His sentence computation has never been reversed, modified, or set aside by the 19th Judicial District Court. This lawsuit should be dismissed.

---

[1] CARP is codified in Louisiana Revised Statutes §§15:1171-1179. The Prison Litigation Reform Act, which is a different Act than CARP, is codified in La. R.S. §§15:1181-1191.

A. <u>The newly-joined defendants are not precluded from presenting their *Heck* argument.</u>

Defendants Griffin, Gryder, and Dibenedetto, hereby join in the pending Motion to Dismiss based on *Heck v. Humphrey*, filed by Defendants James LeBlanc and Terry Lawson. Doc. 84. The arguments made by LeBlanc and Lawson are further incorporated herein by reference thereto. Doc. 84-1, Doc. 87. In addition to the arguments made in the pending Motion to Dismiss, Doc. 84, Defendants Griffin, Gryder and Dibenedetto note the following.

Defendants Griffin, Gryder, and Dibenedetto were joined in this lawsuit by the Second Amended Complaint on May 24, 2021, (Doc. 83) which was filed over 15 months after the Court's prior ruling denying application of *Heck v. Humphrey* (Doc. 47).   Thus, Griffin, Gryder, and Dibenedetto were not parties to the prior Motion and they are not precluded from presenting the *Heck* issue to the Court.

B.    <u>This sentence computation suit is barred by *Heck*.</u>

The Plaintiff is suing under 42 U.S.C. §1983 and state law on the ground that DPSC officials allegedly miscalculated his term of imprisonment by declining to award him credit for certain time he served in custody in Arkansas.  As a result of that alleged miscalculation, the Plaintiff claims he "was held for 60 days past his court-ordered release date."  Doc. 83, p. 4, ¶A. No judge ordered the Plaintiff to be released from custody on a particular date.  The Plaintiff was sentenced to serve "four years at hard labor" and was awarded "credit for time served in Arkansas." Doc. 83, ¶20.  The plaintiff claims DPSC officials did not give him all of the time-served credits he was due under that sentence.

Plaintiff's claim that his sentence was miscalculated, intentionally or otherwise, falls under the rule announced by the United States Supreme Court in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).  A claim of sentence miscalculation "is legally frivolous

unless the ... [sentence computation] at issue has been reversed, expunged, invalidated, or otherwise called into question." *Allen v. Louisiana*, No. 3:10-CV-1613, 2010 WL 5582938, at *2 (W.D. La. Nov. 29, 2010), *report and recommendation adopted,* No. 3:10-CV-1613, 2011 WL 127108 (W.D. La. Jan. 14, 2011) (quoting *Hamilton v. Lyons,* 74 F.3d 99, 102 (5th Cir.1996)).

If there was ever any doubt that *Heck* bars a §1983 claim attacking a sentence computation, the Fifth Circuit recently dispelled it.  On June 24, 2021, the Fifth Circuit entered a published opinion in *Colvin v. LeBlanc*, 2 F.4th 494 (5th Cir. 2021), which unequivocally reaffirms that sentence computation challenges are barred by *Heck*.

In *Heck v. Humphrey*, the Supreme Court found that a §1983 suit cannot be brought if a finding in favor of the Plaintiff would necessarily imply the invalidity of a conviction or sentence. Precedent of the Supreme Court and Fifth Circuit, which is followed by this District, establishes that *Heck* bars a §1983 claim in which the plaintiff challenges the computation of his sentence. The Supreme Court, in *Muhammad v. Close*, 540 U.S. 749, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004), expressly noted that *Heck* bars §1983 claims challenging "the State's calculation of time to be served in accordance with the underlying sentence."  *Muhammad*, 540 U.S. at 754-755.

In *Colvin,* the Fifth Circuit explained:

> Regardless of whether [plaintiff] challenges the application of good time credit or the failure to credit his state sentence with federal time served, his claim ultimately challenges a single issue: the duration of his state sentence. A claim for speedier release is actionable by writ of habeas corpus, and a §1983 damages action predicated on the sentence calculation issue is barred by *Heck* because success on that claim would necessarily invalidate the duration of his incarceration.

*Colvin*, 2021 WL 2562449, at *4 (footnote omitted).  See also *McGrew v. Texas Bd. of Pardons & Paroles*, 47 F.3d 158, 161 (5th Cir. 1995); *Ahmadi v. Davis*, 806 F. App'x 327, 328 (5th Cir. 2020) (unpublished per curiam); *Newsome v. Texas Bd. of Pardon & Parole*, 124 F. App'x 256,

256 (5th Cir. 2005) (unpublished per curiam); *Hassler v. Carson Cty.*, 111 F. App'x 728, 729 (5th

Cir. 2004).

That Ellis Hicks was not incarcerated at the time he filed suit is immaterial to whether *Heck*

bars his §1983 claims.

> It may be that the sentence Plaintiff complains about has been completely served
> by this time. But *Heck* applies whether Plaintiff is complaining about a sentence he
> is still serving or one he has completed. In the Fifth Circuit, *Heck* applies even to
> prisoners who are no longer in custody and are no longer eligible for habeas
> relief. *Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000); *Black v. Hathaway*,
> 616 Fed. Appx. 650, 653 (5th Cir. 2015).
>
> In *Randell*, the plaintiff sought damages on a claim that he was not given
> proper sentence credit and served extra time. His claim was held to be barred
> by *Heck* even though he was no longer in custody and thus could not file a habeas
> petition. Not every circuit agrees with the *Randell* approach when the plaintiff is no
> longer in custody, but it is still applied in this circuit. *Black*, 616 Fed. Appx. at 653
> n. 28; *Thomas v. Louisiana, Dep't of Soc. Servs.*, 406 Fed. Appx. 890, 898 n. 5 (5th
> Cir. 2010); *Bryant v. Louisiana Dep't of Pub. Safety & Corr.*, 2019 WL 5538054
> (E.D. La. 2019). *See also Ahmadi v. Davis*, 806 Fed. Appx. 329 (5th Cir. 2020)
> (affirming *Heck* dismissal of claim where plaintiff "sought damages based on an
> allegedly unlawful period of confinement and an incorrect calculation of his date
> of discharge.").

*Williams v. LeBlanc*, No. CV 18-CV-731, 2020 WL 4742837, at *3 (W.D. La. July 29,

2020), report and recommendation adopted, No. 18-CV-731, 2020 WL 4740485 (W.D. La. Aug.

14, 2020).

The judges of this District also follow the aforementioned precedent.   See e.g. *King v.

Cain*, No. CIV.A. 10-604-BAJ, 2010 WL 4623962, at *1 (M.D. La. Oct. 6, 2010), report and

recommendation adopted, No. CIV.A. 10-604-BAJ, 2010 WL 4622186 (M.D. La. Nov. 5, 2010)

("unless the plaintiff can demonstrate that a state court or other authorized tribunal has determined

that his sentence has been improperly calculated, he has no damages claim against the defendants

cognizable under § 1983.") (citing *Heck; McGrew*); *Blair v. Stalder*, No. CIV.A. 07-0836-C-M2,

2008 WL 482602, at *2 (M.D. La. Jan. 14, 2008) (dismissing claim as legally frivolous because it

was barred by *Heck*). This Honorable Court is among the judges of this District who have held that *Heck* bars claims like the Plaintiff's. See e.g. *London v. Dep't of Corr.*, No. CIV.A. 14-362-SDD, 2014 WL 3563416, at *3 (M.D. La. July 18, 2014) (Dick, J. adopting the findings of the Magistrate Judge). This Honorable Court, in *London*, dismissed that plaintiff's collateral attack on his sentence computation as legally frivolous. Plaintiff Ellis Hicks's lawsuit is legally indistinguishable from *London*'s suit.

"If an individual wants to challenge a conviction or sentence, the proper avenue for relief is criminal appeal, postconviction application, or other authorized collateral challenge—not an end-run through Section 1983." *Williams*, 2020 WL 4742837, at *3. There can be no dispute that all of the Plaintiff's claims in this case depend on a finding that the Plaintiff's sentence was miscalculated. This lawsuit is, in every respect, a direct challenge to DPSC's calculation of the Plaintiff's sentence. The precedent discussed above establishes that the Plaintiff is *barred* from filing a §1983 suit challenging his sentence computation until such time as the computation has been reversed, invalidated, or otherwise set aside. The Plaintiff does not allege and cannot show that "the calculation of his sentence has been reversed, invalidated, or otherwise set aside. Consequently, his suit for damages based on his allegedly unlawful confinement is barred by *Heck*." *Ahmadi*, 806 Fed. Appx. 327 (citing *Magee*, 912 F.3d at 822).

C.     Plaintiff abandoned his state law claims by failing to pursue them through CARP; all state law claims must be dismissed with prejudice.

The Plaintiff's state law claims are similarly barred. The Corrections Administrative Remedy Procedure [CARP] is codified in La. R.S. 15:1171 – 15:1179. The Louisiana Prison Litigation Reform Act [PLRA] is codified in La. R.S. 15:1181-1191. CARP and the PLRA are two different Acts. The Defendants are not arguing that the Plaintiff failed to exhaust administrative remedies as is a required prerequisite to suit under the PLRA. The Defendants are

arguing that the Plaintiff was required to appeal DPSC's calculation of his sentence, which appellate review process is in CARP.

"A prisoner alleging an error in time computation must pursue his claim through CARP, with appellate review first at the district court and then with [the First Circuit Court of Appeal]." *Madison v. Ward*, 2000-2842 (La. App. 1 Cir. 7/3/02), 825 So. 2d 1245, 1255. Unless and until the prisoner's sentence computation is "corrected" through CARP, the prisoner cannot claim damages for or arising from any alleged error in the computation.  See e.g. *Stemley v. Goines*, 2006-1556 (La. App. 4 Cir. 4/11/07), 954 So. 2d 403, 404, writ denied, 2007-1280 (La. 4/18/08), 978 So. 2d 340.  CARP provides for the "exclusive remedy available to the offender for complaints or grievances governed thereby insofar as federal law allows."  §15:1171(B). The Plaintiff abandoned *all* of his state law claims by failing to pursue those claims through CARP.  See La. R.S. 15:1172(C).  Therefore, all of the state law claims must be dismissed with prejudice.  *Id.*

This Honorable Court has acknowledged the CARP procedures for reviewing sentence computations and found that federal district courts lack jurisdiction to "review, modify, or nullify final orders of state courts."  *London*, 2014 WL 3563416 (quoting *Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir.2000)).  It logically follows that, if this Honorable Court lacks jurisdiction to review a final order of the state court, this Court similarly lacks jurisdiction to review, modify, or nullify the underlying administrative decision that the inmate declined to appeal through the state courts. Accord *Stemley*, supra.  See also *Owens v. Stalder*, No. CIV.A. 08-768, 2015 WL 1047585, at *1 (W.D. La. Mar. 10, 2015), aff'd in part, appeal dismissed in part, 638 F. App'x 277 (5th Cir. 2016) (finding the state court's ruling on the plaintiff's sentence computation was binding on the federal court).

The Plaintiff's failure to challenge his sentence computation through all of the steps of CARP is fatal to all of his state law claims. The Plaintiff abandoned *all* of his state law claims by failing to pursue those claims through CARP. La. R.S. 15:1172(C). Therefore, all of the state law claims must be dismissed with prejudice. *Id.*

### III.   Defendants Gryder, Griffin and Dibenedetto are entitled to qualified immunity

The Plaintiff sues the moving defendants under 42 U.S.C. §1983, for monetary relief only, claiming a Fourteenth Amendment due process violation. Rec. Doc. 83, ¶98. The Plaintiff also sues the movants under Article I, Section 2 of the Louisiana Constitution, which is Louisiana's due process clause. *Id*. at ¶101. "The Fourteenth Amendment of the United States Constitution provides that no state shall deprive any person of 'life, liberty, and property, except by due process of law.'" *Cripps v. Louisiana Dep't of Agric. & Forestry*, 819 F.3d 221, 232 (5th Cir. 2016) (quoting U.S. Const. amend. XIV, § 1). "The Louisiana Constitution provides the same due process protections as that of the United States Constitution." *Id.* (citing *Progressive Sec. Ins. Co. v. Foster*, 711 So.2d 675, 688 (La.1998)) ("[O]ur due process guarantee in La. Const. Art. I, § 2 does not vary from the Due Process Clause of the Fourteenth Amendment to the United States Constitution."). Correspondingly, the qualified immunity defense and its governing legal standards apply equally to both the federal and state due process claims. *Burge v. Par. of St. Tammany*, 187 F.3d 452, 482 (5th Cir. 1999) (quoting *Moresi v. Department of Wildlife and Fisheries,* 567 So.2d 1081, 1093 (La.1990)) (holding "the same factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under § 1983 require us to recognize a similar immunity for them under any action arising from the state constitution.")

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) *(quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "Qualified immunity balances two important interests-- the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). This Honorable Court may consider either prong to begin its analysis. *Id* (citing *Pearson*, 555 U.S. at 236, 129 S.Ct. at 818).

On *de novo* review of the Motion to Dismiss Secretary LeBlanc and Terry Lawson filed in this case, the Fifth Circuit explained how the two steps of the qualified immunity analysis are applied to the well-pleaded facts.

> First, a court decides whether the facts that the plaintiff has alleged in her complaint show a violation of a constitutional right. [*Pearson*, 555 U.S. at 231]. The next step is to ask whether the facts pleaded establish that a defendant's actions were objectively unreasonable in light of clearly established law at the time of the alleged misconduct. *Id*. at 244, 129 S.Ct. 808. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (quoting *Saucier* [*v. Katz*], 533 U.S. [194,] 202, 121 S.Ct. 2151 [2001]).

*Hicks v. LeBlanc*, 832 F. App'x 836, 840 (5th Cir. 2020).

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir.2002) (*en*

banc)). If either prong is resolved in favor of the defendant, the defendant is entitled to qualified immunity. The ultimate conclusion that the defendant is not entitled to qualified immunity "mandates a full *Saucier* inquiry." *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009). The qualified immunity of each moving defendant must be considered independently. *Meadours v. Ermel*, 483 F.3d 417, 421 (5th Cir. 2007) (citations omitted).

A. <u>Tracy Dibenedetto is entitled to Qualified Immunity</u>

The Plaintiff sues Ms. Dibenedetto for not resolving his Administrative Remedy Procedure Grievance (ARP) to his satisfaction. See Doc. 83, ¶30, ¶41-43. "[P]risoners do not have a federally protected liberty interest in having their grievances resolved to their satisfaction." *Hawes v. Stephens*, 964 F.3d 412, 418 (5th Cir. 2020), *cert. denied sub nom. Hawes v. Lumpkin*, 141 S. Ct. 1465, 209 L. Ed. 2d 180 (2021) (citing *Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005)). Prisoners also do not have a constitutional right "to have [their] claims reviewed pursuant to a grievance process that is responsive to [their] perceived injustices." *Jackson v. Dunn*, 610 F. App'x 397, 398 (5th Cir. 2015).

Furthermore, it is significant that there is a glaring absence of law that clearly establishes the parameters of what officials in Ms. Dibenedetto's position, i.e. those who receive and respond to inmate grievances, are mandated to do in the circumstances under penalty of personal liability under §1983. Judge Martin L.C. Feldman of the Eastern District of Louisiana recently dismissed similar claims brought against Ms. Dibenedetto finding that she is entitled to qualified immunity for her role in DPSC's ARP program. *Traweek v. Gusman*, No. CV 19-1384, 2021 WL 199387, at *4 (E.D. La. Jan. 20, 2021), *reconsideration denied*, No. CV 19-1384, 2021 WL 493073 (E.D. La. Feb. 10, 2021). Judge Feldman specifically noted the absence of jurisprudence on point when dismissing the claims against Ms. Dibenedetto. *Id.* Judge Feldman found, "any failure by

11

DiBenedetto to move heaven and earth to secure Traweek's release the moment she supposedly learned of his overdetention is not cognizable for purposes of negating DiBenedetto's entitlement to the broad qualified immunity afforded to officials in her position." *Id*.

The denial of Plaintiff's ARP did not violate his constitutional rights and was not objectively unreasonable conduct in light of clearly established law. Ms. Dibenedetto is entitled to qualified immunity from suit.

### B. Angela Griffin is entitled to qualified immunity.

The Plaintiff alleges Ms. Griffin was the superior of Ms. Gryder and Mr. Lawson. Doc. 83, ¶16. The Plaintiff conclusorily alleges "Ms. Griffin was aware that Mr. Hicks had not been properly credited for his time served in Arkansas, yet failed to instruct Ms. Gryder, Mr. Lawson, or any other DOC employee to recalculate with the proper credits at any time prior to April 2018, when Ellis had already been overdetained." Doc. 83, ¶67. Contrary to that conclusory allegation, Plaintiff alleges Ms. Griffin instructed Lawson to recalculate the Plaintiff's sentence in 2017 after a jail credit letter was sent from Arkansas to Lawson on July 3, 2017. *Id*. at ¶34. The Plaintiff admits "some of the time Mr. Hicks served in Arkansas" was included in that July, 2017 sentence calculation. *Id*. at ¶35. The Plaintiff does not allege whether he was credited with all of the days of jail credit identified in the jail credit letter. Instead, Plaintiff alleges Lawson "refused to include the 110 days of pre-trial credit from Arkansas." *Id*. Plaintiff does not allege that Angela Griffin was informed that he was allegedly due another 110 days of credit over and above the days of credit identified in the jail credit letter. Furthermore, the Plaintiff alleges the ARP response from Tracy Dibenedetto indicated his sentence computation properly included Arkansas credits. Plaintiff alleges Ms. Griffin had no further involvement until April 20, 2018.

The Plaintiff conclusorily alleges "Ms. Griffin was aware that on April 20, 2018, Ellis was due for immediate release, yet Ms. Gryder deliberately delayed his release. Ms. Griffin failed to direct Ms. Gryder to immediately release Ellis and not continue to unlawfully detain him." Doc. 83, ¶68. Ms. Griffin's alleged knowledge that Hicks was due for "immediate release" came from Ms. Gryder. See *id* at ¶65. Allegedly, on April 20, 2018, Griffin requested Lawson contact the Faulkner County (AR) Sheriff's Office to determine "how much time Mr. Hicks spent incarcerated in Arkansas pre-trial." *Id*. at ¶62. Thereafter, "Ms. Gryder emailed Ms. Griffin to let her know 'we are applying an additional 132 days of jail credit from AR for 2014 and 2015' which 'will make him due for immediate release.'" *Id*. at ¶65. There is no allegation that Griffin knew Gryder allegedly "manually changed his release date from April 20, 2018 to April 25, 2018, deliberately holding him for an additional five (5) days." See *id* at ¶66.

To summarize, the Plaintiff alleges that, on two separate occasions, Ms. Griffin instructed her subordinates to gather or apply evidence of Arkansas jail credit to the calculation of the Plaintiff's sentence. She did not violate the Plaintiff's constitutional rights or act unreasonably; Ms. Griffin is entitled to qualified immunity and to dismissal of the claims against her. It is also significant that the allegations against Ms. Griffin do not include any allegation that she was ever notified that Terry Lawson intentionally withheld jail credits that Lawson knew were supposed to be awarded.

The Plaintiff sues Angela Griffin for her *de minimis* direct involvement in Plaintiff's sentence computation, see Doc. 83, ¶98-100, and "for damages, punitive damages, and attorneys fees" under the exact "*Monell/Hinojosa* and Failure to Train/Supervise" theory that was dismissed against Secretary LeBlanc. *Id*. at ¶112, *et seq*. The "*Monell*" theory may be easily disposed of as there is no allegation that Angela Griffin was a policymaker. Furthermore, that entire Count was

dismissed by the Fifth Circuit, and the Plaintiff did not even make a cursory effort to amend the claim when joining Angela Griffin in it. *Hicks v. LeBlanc*, 832 F. App'x 836, 842 (5th Cir. 2020). The Fifth Circuit explained:

> Hicks alleged that LeBlanc knew of the DPSC's long history of over-detaining inmates; that DPSC employees used different methods to calculate release dates; and that the DPSC had not disciplined employees who miscalculated sentences. However, the alleged facts—which included processing delays, data errors, inconsistent calculation methodologies, and unspecified deficiencies—speak to the incompetence of DPSC employees and the lack of adequate training and supervision. Based on these allegations, LeBlanc could be held liable for *incompetent* over-detention, such as the failure to process a prisoner's release or immediately compute an inmate's sentence after being sentenced to time served. *See Traweek v. Gusman*, 414 F. Supp. 3d 847 (E.D. La. 2019); *Grant v. Gusman*, No. 17-2797, 2018 WL 3869494 (E.D. La. Aug. 14, 2018). But it cannot be said that LeBlanc had notice that his employees were purposely disregarding sentencing orders out of retaliatory intent. The complaint was devoid of allegations supporting the reasonable inference that a pattern of *intentional* over-detention existed in the DPSC; that is, the alleged facts suggest a pattern of over-detention caused by quality control deficiencies and the lack of training and supervision, not a pattern of over-detention stemming from the blatant refusal to credit offenders with time served contrary to sentencing orders. In the absence of such a pattern, LeBlanc could not have acted with deliberate indifference to Lawson's intentional sentencing miscalculation and over-detention of Hicks. Accordingly, the district court erred in denying LeBlanc's defense of qualified immunity.

*Hicks*, 832 F. App'x at 842. It is incomprehensible that the Plaintiff would simply add Angela Griffin's name to Count 6 without making any effort whatsoever to allege facts to support such a claim or to amend the claim to acknowledge the foregoing ruling of the Fifth Circuit. Inclusion of the irrelevant factual allegations, such as the ones pertaining to the now-dismissed claims against Secretary LeBlanc, is typical of a "shotgun pleading." There is no basis for keeping Count 6 in this lawsuit any further.

With regard to Plaintiff's claim that Angela Griffin is liable to him for money damages for her alleged *de minimis* personal involvement in his sentence computation, Ms. Griffin is entitled to qualified immunity from suit. No cases establish what all reasonable officials in Angela

Griffin's position were mandated to do under the circumstances pleaded in the Complaint. See *Johnson v. Johnson*, 385 F.3d 503, 526 (5th Cir. 2004) ("Given that neither the Supreme Court nor this court has delineated the contours of what supervisory officials must do on pain of personal liability, their conduct did not violate clearly established law of which reasonable officers should have known.") As explained above, the Plaintiff alleges that Angela Griffin instructed her subordinates to collect and apply proven jail credit to Plaintiff's sentence calculation. That is exactly the action the Plaintiff alleges the Defendants were mandated to take under the 14th Amendment. Plaintiff can cite no jurisprudence that mandated Angela Griffin, or other prison administrators in her position, to do something other than what she did. As Judge Feldman explained regarding Ms. Dibenedetto, "any failure by [Griffin] to move heaven and earth to secure [Hicks's] release the moment she supposedly learned of his overdetention is not cognizable for purposes of negating [Griffin's] entitlement to the broad qualified immunity afforded to officials in her position." *Traweek*, 2021 WL 199387, at *4 (E.D. La. Jan. 20, 2021).

### C.  Sally Gryder

Defendant Sally Gryder is also entitled to qualified immunity from suit. Mr. Gryder is named as "a DOC employee who supervised and trained Mr. Lawson at David Wade Correctional Center." Doc. 83, ¶3; ¶23. Ms. Gryder is not being sued for inadequately training Mr. Lawson. See *Id*. at ¶112, *et seq*.

The Plaintiff alleges that Ms. Gryder, as the supervisor of Mr. Lawson, reviewed the sentence computations performed by Mr. Lawson in February and March, 2017, and "did not instruct him to include credit for time served in Arkansas", see Doc. 83, ¶25-28. In July, 2017, however, Lawson received a jail credit letter from Arkansas and Ms. Gryder instructed Lawson to recalculate his sentence. *Id*. at ¶34. A mistaken sentence computation cannot subject Ms. Gryder

(or anyone else) to liability under §1983, particularly when it was corrected before the alleged constitutional violation.  Here, Plaintiff alleges his constitutional rights were violated beginning in February 2018, months after Lawson, at Griffin and Gryder's instruction, included Arkansas jail credit in Plaintiff's sentence calculation.

Then, on April 20, 2018, Ms. Gryder (with Ms. Griffin) requested Lawson contact the Faulkner County Sheriff's Office, after which Ms. Gryder re-calculated the Plaintiff's sentence and allegedly determined that the Plaintiff "should have been released on March 1, 2018."  Doc. 83, ¶62-63.  Ms. Gryder then informed Ms. Griffin that she applied an additional 132 days of jail credit, which "will make him due for immediate release."  Doc. 83, ¶65. Although that phrasing is quoted in the Complaint, the Plaintiff does not reference its source.  Had he honestly referenced the source, he would have mentioned that Ms. Gryder also told Ms. Griffin that they were going to check the status of an outstanding out of state warrant.  Nonetheless, Ms. Gryder told Ms. Griffin that the Plaintiff was due for "immediate release".  None of that conduct is objectively unreasonable in light of any clearly established jurisprudence.

Again, to be clear, the Plaintiff alleges that in July 2017, Terry Lawson received a jail credit letter from Arkansas, which stated that the Plaintiff had spent an unidentified number of days in custody in Arkansas.  At the instruction of Ms. Gryder and Ms. Griffin, Lawson recalculated the Plaintiff's sentence to include the Arkansas jail credit from that letter.  There are <u>no facts pleaded whatsoever</u> that indicate that, at any time between July 2017 and April 20, 2018, <u>Sally Gryder</u> was made aware that the Plaintiff was allegedly entitled to more credit for time served in Arkansas than was indicated in the Arkansas jail credit letter.  When additional information was received from Faulkner County, Sally Gryder personally applied that credit to Plaintiff's sentence computation. Those actions are not objectively unreasonable in light of any clearly established law.

16

The Plaintiff then alleges that Ms. Gryder "manually changed his release date from April 20, 2018 to April 25, 2018, deliberately holding him for an additional five (5) days." Doc. 83, ¶66. It is unclear what "release date" Ms. Gryder changed. It is also unclear, from the facts pled, when Ms. Gryder changed the date relative to Plaintiff's release from custody. However, despite that conclusory allegation, the Plaintiff alleges Lawson, Ms. Gryder's subordinate, began completing Hicks's release packet on April 24, 2018, and completed it on April 25, 2018. *Id*. at ¶69. The Plaintiff did not offer any allegation, conclusory or otherwise, explaining when, why, or how Ms. Gryder "changed his release date" but the facts suggest it was changed to provide Terry Lawson with time to complete the release clearing checklist. Nonetheless, it is the Plaintiff's obligation to plead and eventually prove facts to overcome the qualified immunity of Sally Gryder. The conclusory allegations and minimal facts pled do not show conduct by Sally Gryder that was objectively unreasonable in light of clearly established law. Therefore, Ms. Gryder is entitled to qualified immunity from suit.

**IV.    Defendants Gryder, Griffin, and Dibenedetto are entitled to dismissal of the state law claims against them.**

As is typical of Plaintiff's shotgun pleadings, he lodges three separate "counts" under Louisiana law against "all defendants": false imprisonment, a violation of the Louisiana Constitution, and negligence. All of the "counts", including the state law "counts" arise from the single set of facts that preceded the counts. As discussed above, the claim under the Louisiana Constitution is identical to the claim under §1983; both of those claims are evaluated under the same legal standard. Plaintiff's false imprisonment and negligence claims should also both be dismissed.

A.    <u>False Imprisonment</u>

The Plaintiff sues "all defendants" for false imprisonment. He alleges:

Defendants had possession of several court documents from Claiborne Parish and the State of Arkansas unequivocally demonstrating that Ellis was entitled to credit for time served in Arkansas, which should have resulted in a release date of February 24, 2018. Defendants, however, imprisoned Ellis until April 25, 2018. Defendants thus falsely imprisoned Ellis by unlawfully holding him past his release date.

Doc. 83, ¶91-93.

The tort of false imprisonment "consists of the following two essential elements: (1) detention of the person; and (2) the unlawfulness of the detention." *Hernandez v. Theriot*, 709 F. App'x 755, 758 (5th Cir. 2017)(unpublished) (quoting *Kennedy v. Sheriff of E. Baton Rouge*, 2005-1418 (La. 7/10/06), 935 So. 2d 669, 690 (citation omitted)).  Actual detention by each Defendant is an essential element of a false imprisonment claim. *Kennedy*, 935 So. 2d at 690.  See also e.g. *Waguespack v. Judge*, 04-137 (La. App. 5 Cir. 6/29/04), 877 So. 2d 1090, 1093 ("Although the Judges' statements to the sheriff's office may have resulted in arrest, there are no allegations that the Judges restrained or detained Waguespack and thus do not give rise to a claim of false imprisonment.").  Thus, aside from alleging he was incarcerated (which is an undisputed fact), the Plaintiff must allege, and ultimately prove, he was detained by each Defendant he claims is personally liable for the detention. *Id*.

No facts are pleaded showing the Plaintiff was imprisoned, detained, or held by Angela Griffin, Sally Gryder, or Tracy Dibenedetto.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference **that the defendant is liable for the misconduct alleged**." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (internal citations and quotation marks omitted; emphasis added).

The facts pleaded do not show Defendants Griffin, Gryder, or Dibenedetto are liable for false imprisonment. Plaintiff alleges he was sentenced to serve "four years at hard labor," Doc. 83, ¶20, which indicates, as a matter of law, that he was committed to DPSC custody. See La. R.S. 15:824(C). Plaintiff alleges he served his entire sentence in the custody of the Sheriff of the Claiborne Parish Detention Center. Doc. 83, ¶20. "Put simply [Plaintiff] offers the Court no basis for concluding that his overdetention in [Claiborne Parish Prison] supplies him with plausible false imprisonment claims against bureaucrats inhabiting offices and cubicles and exerting no physical control over his detention or release." *Traweek v. Gusman*, No. CV 19-1384, 2021 WL 493073, at *2 (E.D. La. Feb. 10, 2021). Plaintiff's failure to plead facts showing that Defendants Griffin, Gryder, and Dibenedetto personally imprisoned him is fatal to the false imprisonment claims against them.

Considering the Plaintiff must plead and then prove each defendant detained the Plaintiff in order to hold her liable for false imprisonment and the Plaintiff does not plead any facts supporting that essential element of the claim, the false imprisonment claims against Defendants Griffin, Gryder, and Dibenedetto should be dismissed with prejudice.

B. Negligence

The negligence claims against "all defendants" should also be dismissed. Plaintiff alleges "all defendants" owed him the "duty to effect his timely release" due to their roles as "jailers." Doc. 83, ¶94. Each of the Defendants sued in this case hold vastly different positions at DPSC and, as such, their duties differ dramatically. Plaintiff's shotgun pleading cannot support the conclusory allegation that all five of the Defendants, from the Secretary of the Department, to the person performing the time computation, owed the same legal duty. Furthermore, there is absolutely no indication that any one of the persons sued held the authority to order Plaintiff's

19

release from the physical custody of the parish sheriff.  As to Ms. Dibenedetto, Judge Feldman

explained, "with no indication that DiBenedetto had any ability to singlehandedly assure

Traweek's timely release while operating in a tangled bureaucratic web that required action by a

bevy of other individuals, there is no evidence that DiBenedetto's actions – or failures to act – were

a "substantial factor" in Traweek's overdetention."  Traweek v. Gusman, No. CV 19-1384, 2021

WL 199387, at *6 (E.D. La. Jan. 20, 2021), reconsideration denied, No. CV 19-1384, 2021 WL

493073 (E.D. La. Feb. 10, 2021).  Such is the case here.

As to Sally Gryder, Judge Feldman's analysis of the negligence claim against Ms. Ashley

Jones in instructive.  Ms. Jones performed the sentence computation of Traweek's sentence.  Judge

Feldman held "[l]ike DiBenedetto, Jones is merely a single actor in a large and multifaceted

bureaucracy. As a result, she can only do what she has the power to do, and there is no evidence

that her actions were beyond the pale or made a substantial difference in Traweek's particular

case." *Id*.

Finally, with regard to Angela Griffin, the allegations against her, as explained above, do

not indicate she did anything wrong at all.  The Plaintiff alleges that, on two separate occasions,

Ms. Griffin instructed her subordinates to gather or apply Arkansas jail credit to Plaintiff's

sentence computation.  Considering that is the exact conduct the Plaintiff is claiming Terry Lawson

is liable for *not doing*, it is beyond comprehension that Ms. Griffin's actions could subject her to

liability under a negligence theory.

## V.    CONCLUSION

This suit should be dismissed in its entirety because it is a collateral attack on the

computation of the Plaintiff's sentence.  Thus, the §1983 claims are barred by *Heck* and the state

law claims are barred by Plaintiff's failure to appeal his sentence computation through CARP.

Additionally, Defendants Griffin, Gryder, and Dibenedetto are entitled to qualified immunity from suit and to dismissal with prejudice of the state law claims.

Respectfully Submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

BY:    *s/Phyllis E. Glazer*_____
**PHYLLIS E. GLAZER (#29878)** (Lead Counsel)
**ASSISTANT ATTORNEY GENERAL**

**Louisiana Department of Justice**
Litigation Division, Civil Rights Section
1885 North Third Street, 4th Floor
Post Office Box 94005 (70804-9005)
Baton Rouge, Louisiana 70802
Telephone:    225-326-6300
Facsimile:    225-326-6495
E-mail:        GlazerP@ag.louisiana.gov
*Attorney for the DPSC Defendants*