**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**


ELLIS RAY HICKS                                                    CIVIL ACTION

VERSUS                                                               19-108-SDD-RLB

DEPARTMENT OF PUBLIC SAFETY &
CORRECTIONS, ET AL.


### RULING

This matter is before the Court on the Motion to Dismiss Second Amended Complaint[1] by Defendants, James LeBlanc ("LeBlanc"), and Terry Lawson ("Lawson")(or collectively, "Original Defendants").  Plaintiff, Ellis Ray Hicks ("Plaintiff") filed an Opposition to this motion,[2] to which LeBlanc and Lawson filed a Reply.[3]  Also before the Court is a Motion to Dismiss for Failure to State a Claim[4] by newly-added Defendants, Tracy Dibenedetto ("Dibenedetto"), Angela Griffin ("Griffin"), and Sally Gryder ("Gryder")(or collectively, "New Defendants").  Plaintiff filed an Opposition to this motion,[5] to which Dibenedetto, Griffin, and Gryder jointly filed a Reply.[6]  Plaintiff also filed a Supplement Regarding New Authority,[7] which the Court considered.  For the following reasons, the Court finds that Original Defendants' motion should be granted in part and denied in part, and New Defendants' motion should be granted in part and denied in part.

---

[1] Rec. Doc. No. 84.
[2] Rec. Doc. No. 85.
[3] Rec. Doc. No. 87.
[4] Rec. Doc. No. 90.
[5] Rec. Doc. No. 95.
[6] Rec. Doc. No. 109.
[7] Rec. Doc. No. 115.

I.    **FACTUAL & PROCEDURAL BACKGROUND**

This suit arose from the alleged over-detention of Plaintiff following completion of his legal sentence of imprisonment. Plaintiff originally brought suit under 42 U.S.C. § 1983 against two Louisiana Department of Public Safety and Corrections employees, LeBlanc and Lawson, alleging that he was unlawfully detained for 60 days after the expiration of his prison sentence. Plaintiff sued LeBlanc and Lawson in both their official and individual capacities, asserting Fourteenth Amendment due process and First Amendment free speech violations, a *Monell* failure to train/supervise claim, false imprisonment, negligence, *respondeat superior*, indemnification, and a violation of Plaintiff's rights under the Louisiana Constitution.

In a previous Motion to Dismiss, LeBlanc and Lawson raised the following issues: that Plaintiff's claims were barred by (1) Eleventh Amendment sovereign immunity, (2) the *Heck v. Humphrey* doctrine, and (3) qualified immunity.[8] This Court dismissed the claims for monetary damages against LeBlanc and Lawson in their official capacities under sovereign immunity.[9] This Court held that the *Heck* doctrine does not bar Plaintiff's claims.[10] Finally, this Court held that LeBlanc and Lawson were not entitled to qualified immunity.[11] Subsequently, the Fifth Circuit affirmed this Court's ruling that Lawson was not entitled to qualified immunity but reversed this Court's ruling that LeBlanc was not entitled to qualified immunity.[12] Therefore, based on this Court's prior dismissal of official capacity claims against LeBlanc,[13] the Fifth Circuit's reversal granting qualified immunity

---

[8] Rec. Doc. No. 22.
[9] Rec. Doc. No. 47, p. 12.
[10] *Id.* at 15.
[11] *Id.* at 20.
[12] *Hicks v. LeBlanc*, 832 F.App'x. 836 (5th Cir. 2020).
[13] Rec. Doc. No. 47.

to LeBlanc for individual capacity claims,[14] and Plaintiffs' concession that all declaratory relief has been dismissed in this matter, all federal claims and state law constitutional claims against LeBlanc are DISMISSED with prejudice.  LeBlanc remains a Defendant in this matter based on the state law tort claims asserted against him for the reasons explained below.

Subsequently, Plaintiff filed a Motion for Partial Summary Judgment[15] on the Louisiana tort claim of false imprisonment. Defendants LeBlanc and Lawson also sought summary judgment on this claim.[16] However, the Court denied both motions.[17]

Plaintiff filed a Second Amended Complaint,[18] asserting claims against Lawson and LeBlanc and adding DiBenedetto, Gryder, and Griffin as Defendants. Defendants Lawson and LeBlanc filed a Motion to Dismiss,[19] and Defendants DiBenedetto, Gryder, and Griffin filed a separate Motion to Dismiss;[20]  these motions are addressed by this Ruling.

## II.    DEFENDANTS' POSITIONS, GENERALLY

Original Defendants assert the following in support of their Motion to Dismiss Second Amended Complaint.[21] First, Original Defendants maintain the Court should dismiss Plaintiff's claims for declaratory relief.[22] Second, although the Court has previously determined that the *Heck v. Humphrey* doctrine does not bar Plaintiff's claims arising out of the alleged over-detention, Original Defendants request reconsideration and

---

[14] *Hicks*, 832 F.App'x. 836.
[15] Rec. Doc. No. 67.
[16] Rec. Doc. No. 73.  Defendants requested summary judgment in their opposition brief.
[17] Rec. Doc. No. 93.
[18] Rec. Doc. No. 83.
[19] Rec. Doc. No. 84.
[20] Rec. Doc. No. 90.
[21] Rec. Doc. No. 84.
[22] Rec. Doc. No. 84-1, p. 2–8.

reversal of that prior Ruling in light of the recent Fifth Circuit decision in *Colvin v. LeBlanc*.[23] Finally, Original Defendants claim that Plaintiff abandoned his state law claims by failing to exhaust administrative remedies under the Corrections Administrative Remedy Procedure ("CARP").[24]

In their Motion, New Defendants argue: (1) *Heck v. Humphrey* bars Plaintiff's § 1983 claims;[25] (2) that Plaintiff's failure to have his sentence computation invalidated through CARP bars his state law claims;[26] (3) they are entitled to the defense of qualified immunity for the individual capacity claims asserted against them;[27] and they are substantively entitled to dismissal of the state law claims brought against them.[28]

## III.    PLAINTIFF'S POSITION, GENERALLY

In response to Original Defendants' Motion, Plaintiff voluntarily dismisses all claims for declaratory relief.[29] Next, Plaintiff claims that, since this Court has already addressed the applicability of the *Heck* doctrine, it should not reconsider its prior *Ruling* on the issue.[30]  Alternatively, should the Court reconsider the issue, the *Heck* doctrine does not bar the instant suit, even in light of the recent Fifth Circuit decision in *Colvin*.[31] Plaintiff also maintains that CARP does not bar his state law claims.[32]

In response to New Defendants' Motion, Plaintiff maintains that the *Heck* doctrine does not bar this suit and that CARP does not bar his state law claims.[33] Additionally,

---

[23] *Id.* at 8–12.
[24] *Id.* at 12–13.
[25] Rec. Doc. No. 90-1, p. 3–7.
[26] *Id.* at 7–9.
[27] *Id.* at 9–17.
[28] *Id.* at 17–20.
[29] Rec. Doc. No. 85, p. 3.
[30] *Id.* at 3–4.
[31] *Id.* at 4–7.
[32] *Id.* at 7–8.
[33] Rec. Doc. No. 95, p. 1–5.

Plaintiff contends that New Defendants are not entitled to qualified immunity.[34] Finally, Plaintiff argues that New Defendants are not entitled to dismissal of the state law claims against them.[35]

## IV.    LAW & ANALYSIS

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[36] The court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matter of which a court may take judicial notice."[37] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[38] In *Bell Atlantic Corp. v. Twombley*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attached by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[39] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[40] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant

---

[34] *Id.* at 5–8.
[35] *Id.* at 8-9.
[36] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[37] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[38] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205.
[39] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted) [hereinafter *Twombly*].
[40] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citations omitted) [hereinafter *Iqbal*].

is liable for the misconduct alleged."[41] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[42] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[43] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[44] Rather, the inquiry is whether the allegations in the *Complaint* plausibly state a claim for relief.

### A. Motion to Dismiss Second Amended Complaint by Original Defendants

#### 1. Declaratory Relief

Plaintiff has conceded that the claim for declaratory relief should be dismissed, and the Court granted Original Defendants' requested relief on July 14, 2021.[45] Thus, this request for relief is denied as moot.

#### 2. Applicability of *Heck v. Humphrey* as to All Defendants Following *Colvin v. LeBlanc*

Original Defendants request reconsideration of the Court's prior Ruling[46] on the applicability of the *Heck v. Humphrey* doctrine under Rule 54(b) of the Federal Rules of Civil Procedure[47] based on Fifth Circuit's recent decision in *Colvin v. LeBlanc*,[48] which

---

[41] *Twombly*, 550 U.S. at 556.
[42] *Iqbal*, 556 U.S. at 678.
[43] *Taha v. William Marsh Rice University*, No. 11-2060, 2012 WL 1576099, at *2 (S.D. Tex. May 3, 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[44] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[45] Rec. Doc. No. 86 (docketed July 15, 2021).
[46] Rec. Doc. No. 47 (holding "*Heck v. Humphrey* does not bar Plaintiff's claims relating to his alleged over-detention.").
[47] Rec. Doc. No. 84-1, p. 8–10.
[48] 2 F.4th 494 (5th Cir. 2021).

Original Defendants argue "reaffirms that sentence computation challenges are barred by *Heck*."[49]  New Defendants make the same argument in their motion.

While Original Defendants and Plaintiff argue over the proper procedural vehicle to reconsider this prior Ruling, the Court must address the same arguments raised by New Defendants.  Thus, the Court finds the procedural issue moot and, further, the Court has discretion to reconsider the issue in any event.[50]

The Court recently addressed an over-detention case wherein this exact argument was made regarding *Colvin*.  In *Frederick v. LeBlanc*,[51] this Court found that *Colvin* did not change the Court's holding that *Heck* did not bar a plaintiff's over-detention case:

> James Colvin was sentenced to eighty years in prison after a 1983 jury conviction in Caddo Parish, Louisiana. In 1986, he escaped from the Louisiana State Penitentiary, only to be recaptured, sentenced to a new, lengthy prison term, and ultimately paroled in 2004. Colvin then robbed a bank, for which he earned a new term of imprisonment. After he was transferred – without a valid detainer, he contended – from the United States Penitentiary in Lewisburg, Pennsylvania to the Elayn Hunt Correctional Center in Louisiana, Colvin "filed an Administrative Remedy Procedure, requesting immediate release and credit for time served in federal custody." Colvin later alleged in his §1983 suit that, although a records clerk at Elayn Hunt initially changed his release date from January 1, 2052 to January 1, 2053 to properly credit him for the time he spent in federal custody, when he was again transferred to Rayburn Correctional Center, a different records clerk "reverted" his release date to 2052.
>
> Defendants claim that *Colvin* "unequivocally reaffirms that sentence computation challenges are barred by *Heck*." This statement is at odds with the Court's view of the case. In fact, the Fifth Circuit appears to disagree that *Colvin* is a simple case of computation, noting that although the district court "characterized Colvin's claim as only involving the miscalculation of his release date . . . Colvin actually challenges two independent acts: (1) the "artificial enhancement" of his sentence, and (2) his illegal extradition."[52] On appeal, Colvin repackaged his "artificial enhancement" argument to instead complain that his release date was incorrect because he was not

---

[49] Rec. Doc. No. 84-1, p. 9.

[50] *See Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010)(citations omitted).

[51] *Frederick v. LeBlanc*, --- F. Supp. 3d. ---, 2021 WL 4448919 (M.D. La. 2021).

[52] *Frederick*, at *2-*3 (quoting *Colvin*, 2 F.4th at 499).

properly credited under Louisiana's good time statutes for the time he previously served in federal prison. Noting that this argument was waived because it was raised for the first time on appeal, the Fifth Circuit nevertheless held that "a § 1983 damages action predicated on the sentence calculation issue is barred by *Heck* because success on that claim would necessarily invalidate the duration of his incarceration."[53] This is *dicta* and does not bind the Court. In any event, the Court is not persuaded that Colvin, an incarcerated individual seeking to hasten his release date by *thirty years*, is similarly situated to Frederick, whose complaint arises out of a roughly three-month period between July and October 2017 when, he alleges, his lawful sentence was fully served but he continued to be detained anyway.

Moreover, the Court finds that Defendants consistently misapprehend the nature of Frederick's claim. In the Court's view, Frederick's suit does not seek to invalidate his conviction or sentence because the essence of his complaint is that not that his sentence was invalid – he does not argue this. Instead, he asserts that *he was held beyond* the expiration of his admittedly valid sentence. While Frederick does allege that DOC miscalculated his release date, this allegation does not challenge the validity of his sentence as rendered by the sentencing judge. Frederick's claim arises *after* his lawful sentence had been served and DOC allegedly continued to detain him anyway. Overall, the Court finds that it would be misguided to apply *Heck* here, where the challenge is not directed at Frederick's conviction and sentence but rather DOC's procedures for calculating his release date and releasing him timely. In other words, Frederick contends that DOC failed to abide the court's lawful sentence by over detaining him.[54]

The Court stands by its analysis and finds that the reasoning and holding in *Frederick* regarding *Colvin* applies equally to the facts of the present case.

### 3. State Law Claims & Exhaustion Through CARP

All Defendants also assert that Plaintiff's state law claims are barred because Plaintiff failed to assert those claims through the Corrections Administrative Remedy Procedure (CARP).[55] Defendants rely on the case of *Madison v. Ward*, decided in 2002, which states, "[a] prisoner alleging an error in time computation must pursue his claim

---

[53] *Id.* (quoting *Colvin*, 2 F.4th at 499).
[54] *Id.* (emphasis in original)(record citations omitted).
[55] Rec. Doc. No. 84-1, p. 12–13.

through CARP, with appellate review first at the district court and then with [the First Circuit Court of Appeal]."[56] According to Defendants, a prisoner cannot claim damages for or arising from any alleged error in the computation unless and until the prisoner's sentence is corrected through CARP.[57] Further, Defendants note that this Court "has acknowledged the CARP procedures for reviewing sentence computations and found that federal district courts lack jurisdiction to 'review, modify, or nullify final orders of state courts.'"[58] Thus, "this Court similarly lacks jurisdiction to review, modify, or nullify the underlying administrative decision that the inmate declined to appeal through the state courts."[59]

In response, Plaintiffs rely on the case of *McNeal v. DPS&C*, in which the Middle District held that the Louisiana Prison Litigation Reform Act (PLRA) "does not apply because Mr. McNeal was not a 'prisoner,' and this is not a 'prisoner suit.'"[60] The Middle District noted that the PLRA provides that "[n]o prisoner suit shall assert a claim under state law until such administrative remedies as are available are exhausted. If a prisoner suit is filed in contravention of this Paragraph, the court shall dismiss the suit without prejudice."[61]

However, Defendants correctly point out that the CARP and the PLRA are two different acts: the CARP is codified in La. R.S. 15:1171–15:1179 while the PLRA is codified in La. R.S. 15:1181–15:1191.[62] Defendants maintain that Plaintiff abandoned his

---

[56] *Id.* (citing 2000-2842 (La. App.1 Cir. 7/3/02), 825 So. 2d 1245, 1255).
[57] *Id.*
[58] *Id.* at 13 (quoting *London v. Dept. of Corr.*, No. 14-362, 2014 WL 3563416, at *3 (M.D. La. July 18, 2014)).
[59] *Id.*
[60] Rec. Doc. No. 85, p. 7 (quoting 18-736, 2020 WL 798321, at *9 (M.D. La. Feb. 18, 2020)).
[61] *Id.* (citing *McNeal v. DPS&*C, 18-736, 2020 WL 798321, at *9 (M.D. La. Feb. 18, 2020)).
[62] Rec. Doc. No. 87, p. 7.

state law claims by failing to pursue them through CARP, not that Plaintiff failed to satisfy the exhaustion requirements of the PLRA.[63]

For the following reasons, Defendants' Motions to Dismiss state law claims because Plaintiff failed to exhaust them through CARP is denied. Recently, in *Warren v. LDPS&C*,[64] the Louisiana First Circuit Court of Appeal explained the distinction between the two acts:

> The purpose of the PLRA, La. R.S. 15:1181, *et seq.*, is to provide for civil actions with respect to prison conditions or effects of officials' actions on prisoners' lives. In accordance with the PLRA, a prisoner suit is defined as "any civil proceeding with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison." Prisoner suits are subject to the administrative procedures of [CARP], La. R.S. 15:1171, *et seq.*, which must be exhausted prior to filing suit in district court. The PLRA further provides that exclusive venue for delictual actions for injury or damages shall be the parish where the prison is situated to which the prisoner was assigned when the cause of action arose.
>
> The administrative remedy procedure set forth in CARP is the formal grievance mechanism that all offenders committed to the custody of DPSC must use before they may proceed with a suit in federal or state court. Under the provisions of CARP, an offender aggrieved by an adverse decision by DPSC rendered pursuant to the prescribed administrative remedies may seek judicial review in the Nineteenth Judicial District Court; **however, this provision specifically excludes administrative decisions relative to delictual actions for injury or damages. Delictual actions for injury or damages shall be filed separately as original civil actions pursuant to La. R.S. 15:1177(C). These delictual actions are reviewed de novo by the district court after the exhaustion of the administrative remedies set forth in CARP.[65]**

Tort claims are excluded from judicial review under La. R.S. 15:1177(A); however, the Louisiana legislature "created a specific administrative remedy procedure for prisoner tort claims and reserved the right of a prisoner to file a tort suit in district courts for *de*

---

[63] *Id.*

[64] *Warren v. LDPS&C*, 2020-0247 (La. App. 1 Cir. 2/19/21), 320 So.3d 453.

[65] *Id.* at 455 (emphasis added).

*novo* review after he first exhausted the administrative remedy procedure for tort claims set forth in CARP."[66] Thus, for tort claims, the district courts do not function as courts of review but rather as courts of original jurisdiction.[67] Nonetheless, a prisoner must first file an administrative claim pursuant to section 15:1172 before filing a tort action in district court.[68]

In this matter, Plaintiff filed an ARP, which he exhausted through the DPSC's two-step process.[69] Contrary to Defendants' contention, the CARP does not impose a requirement for review first at the Louisiana 19th Judicial District Court and then at the Louisiana First Circuit Court of Appeal on this tort action. Louisiana Revised Statutes section 15:1177(A) expressly excludes tort actions from this requirement. Instead, section 15:1177(C) requires the filing of a separate tort suit as an original civil action in district court. That is precisely what Plaintiff has done in this action, which was originally filed in the Louisiana 19th Judicial District Court and removed by Defendants to this Court. Thus, Defendants' Motions to Dismiss on this ground is DENIED.

**B. Motion to Dismiss by Defendants Tracy Dibenedetto, Angela Griffin, and Sally Gryder (RD #90)[70]**

1. <u>Whether New Defendants are entitled to qualified immunity.</u>

The New Defendants assert the defense of qualified immunity for the constitutional claims brought against them in their individual capacities. In *Harlow v. Fitzegerald*, the United States Supreme Court established the principle that "government officials

---

[66] *Alonzo v. Cain*, 2014-0172, p. 5 (La. App. 1 Cir. 9/19/14), 154 So.3d 551, 553–54.
[67] *Id*. at 555 n.6.
[68] *Id*.
[69] Rec. Doc. No. 83, ¶ 41; Rec. Doc. No. 109, p. 6 ("The Plaintiff undisputedly filed an ARP, which he exhausted through the DPSC's two-step process, but did not *appeal* the agency's decision by filing a Petition for Judicial Review in the 19th Judicial District Court.").
[70] To the extent there is overlap of the issues in Original and New Defendants motions, those issue were addressed above and apply to all Defendants in both motions.

performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[71] "When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense."[72]

A claim of qualified immunity requires the Court to engage in the well-established two-step analysis developed by the Supreme Court in *Saucier v. Katz*.[73] As stated by the Fifth Circuit in the context of a motion for summary judgment:

> First, we determine whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights. *See, e.g., Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005); *McClendon v. City of Columbia*, 305 F.3d 314, 322–23 (5th Cir.2002) (*en banc*); *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001). If not, our analysis ends. If so, we next consider whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *See, e.g., Tarver*, 410 F.3d at 750; *Glenn*, 242 F.3d at 312. To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions. *See Glenn*, 242 F.3d at 312; *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000); *see also Tarver*, 410 F.3d at 750 ("If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact.").[74]

When the defense of qualified immunity is raised in a Rule 12(b)(6) motion, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness'."[75] The plaintiff must support his claim with "sufficient precision and

---

[71] 457 U.S. 800, 818 (1982).
[72] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*)).
[73] 533 U.S. 194 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 229 (2009). *See Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009).
[74] *Freeman v. Gore*, 483 F.3d 404, 410–11 (5th Cir. 2007).
[75] *McClendon*, 305 F.3d at 323 (quoting *Behrens v. Pelletier*, 516 U.S. 299 (1996)).

factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts."[76] When greater detail is required to address the defense of qualified immunity, the Court may insist that a plaintiff file a reply pursuant to Federal Rule of Civil Procedure 7(a) tailored to an answer pleading the defense of qualified immunity.[77] "The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts."[78]

Another section of this Court, in addressing an over-detention claim, explained that:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.[79]

---

[76] *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir.1995) (*en banc*).
[77] *Id.* at 1433–34.
[78] *Id.*
[79] *Parker v. Louisiana Dept. of Public Safety*, No. 18-1030-JWD-EWD, 2020 WL 4353564, at *5 (M.D. La. July 29, 2021)(quoting *Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted)).

Plaintiff sues New Defendants under 42 U.S.C. § 1983 for monetary damages, alleging a Fourteenth Amendment Due Process violation.[80] Additionally, the Plaintiff sues under Louisiana's Due Process Clause, found in Article I, Section 2 of the Louisiana Constitution.[81] In this case, the Fifth Circuit has held as to the Original Defendants that the first prong of the qualified immunity analysis was satisfied because Plaintiff's due process rights were violated.[82] The Fifth Circuit explained that "[t]he Fourteenth Amendment Due Process Clause is violated where a prisoner remains incarcerated after the legal authority to hold him has expired."[83] Plaintiff has satisfied the first prong of the qualified immunity analysis by adequately alleging his over-detention.[84] Thus, the remaining inquiry is whether each of the New Defendants' alleged conduct was objectively unreasonable in light of clearly established law.

As explained by Judge deGravelles of this Court in *Parker*,

"Despite the defense of qualified immunity, '[i]f [the jailer] negligently establishes a record keeping system in which errors of this kind are likely, he will be held liable.'" *Id.* at 446 (quoting *Bryan v. Jones*, 530 F.2d 1210, 1215 (5th Cir. 1976) (en banc)). "[T]he Fifth Circuit has recognized that a jailer is 'under relatively little time pressure' and 'has the means, freedom, and the duty to make necessary inquiries.'" *Thomas v. Gryder*, No. 17-1595, 2019 WL 5790351, at *7 (M.D. La. Nov. 6, 2019) (quoting *Douthit*, 619 F.2d at 535 (quoting *Whirl*, 407 F.2d at 792, and Bryan, 530 F.2d at 1214)).

However, "[a] defense of official immunity is available to a jailer who has acted in reasonable good faith." *Id.* (quoting Bryan, 530 F.2d at 1214). Moreover, "a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right" *Id.* (quoting *Lewis v. Sec'y of Pub. Safety and Corr.*, 870 F.3d 365, 369 (5th Cir. 2017)).

---

[80] Rec. Doc. No. 83, ¶ 98.
[81] *Id.* at ¶ 101.
[82] *Hicks v. LeBlanc*, 832 F.App'x. 836, 840 (5th Cir. 2020).
[83] *Id.*
[84] *See generally id.*

"[N]egligent conduct does not implicate the due process clause." *Id.* (quoting *Salas v. Carpenter*, 980 F.2d 299, 307 (5th Cir. 1992)). Ultimately, the "determination of whether a jailer violates the Due Process Clause by unduly detaining an individual depends on 'the context of this case.'" *Id.* (quoting *Grant v. Guzman*, No. 17-2797, 2018 WL 1532960, at \*12 (E.D. La. Mar. 29, 2018) (quoting *Douthit*, 619 F.2d at 532)).[85]

For the context in this case, in finding that Lawson was not entitled to qualified immunity at the Rule 12(b)(6) stage, the Fifth Circuit held:

> Further, Lawson's alleged actions were objectively unreasonable in light of clearly established law at the time of his misconduct. A prisoner's right to timely release was clearly established well before 2017, when Lawson's actions began to occur. *See id.* **A reasonable DPSC employee also should have known to credit time served when calculating an inmate's release date, where the court ordered such credit to be considered.** *See* La. Code Crim. Proc. Ann. art. 883.1 ("The sentencing court may specify that the sentence imposed be served concurrently with a sentence imposed by a federal court or a court of any other state...."); La. Code Crim. Proc. Ann. art. 880 ("A defendant shall receive credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence."); *see also Boddye v. La. Dep't of Corr.*, 175 So. 3d 437, 441 (La. Ct. App. 2015) ("It is well settled that the determination of the sentence a defendant is to serve, and what, if any, conditions are to be imposed on that sentence, is made by the trial judge, not the defendant's custodian."); *Dorman v. Ward*, 718 So. 2d 474, 476 (La. Ct. App. 1998) (holding that where an inmate is convicted of a new felony in Florida while on parole supervision on a prior offense in Louisiana, the sentencing court may give credit for time served in Florida toward his Louisiana sentence for parole revocation). Accordingly, the district court did not err in denying Lawson's qualified immunity defense against Hicks' Fourteenth Amendment claim.[86]

With this holding and legal principles in mind, the Court turns to the allegations against the New Defendants and their assertions of the qualified immunity defense.

---

[85] *Parker,* 2020 WL 4353564, at \*11.
[86] *Hicks*, 832 Fed. App'x 836, 840-841 (emphasis added).

*a. Allegations/Arguments as to Tracy DiBenedetto*

Plaintiff alleges that DiBenedetto was a "DOC employee who was responsible for handling all DOC inmate grievances and supervised Mr. Lawson."[87] Plaintiff sues DiBenedetto for failing to instruct DOC employees to correct Plaintiff's time, or computing the time herself, despite knowing that he was not being credited with a single day of Arkansas time.[88] Specifically, Plaintiff alleges that DiBenedetto reviewed Plaintiff's "ARPs requesting that his time spent detained in Arkansas prior to his trial, 110 days, be included in his time calculation and informed Mr. Hicks that the current calculation was correct and would not be modified."[89] Additionally, Plaintiff alleges that DiBenedetto told Lawson that the inclusion of the 110 days was "dependent [on] whether he was held 'under the same circumstances' or Louisiana had a 'hold' on him—two conditions not required by the Court in his sentencing order granting him credit for all time in Arkansas."[90] Plaintiff further alleges that DiBenedetto once again told Lawson to determine whether the two conditions were met after telling Plaintiff that he had received his credit.[91]

DiBenedetto contends that "it is significant that there is a glaring absence of law that clearly establishes the parameters of what officials in Ms. DiBenedetto's position, *i.e.*, those who receive and respond to inmate grievances, are mandated to do in the circumstances under penalty of personal liability under § 1983."[92] She relies on the decision in *Traweek v. Gusman* wherein DiBenedetto was a named defendant in an over-detention case, and the *Traweek* court found that "any failure by DiBenedetto to move

---

[87] Rec. Doc. No. 83, ¶ 14.
[88] *Id.* at ¶ 30.
[89] *Id.* at ¶ 41.
[90] *Id.* at ¶ 42.
[91] *Id.* at ¶ 43.
[92] Rec. Doc. No. 90-1, p. 11.

heaven and earth to secure Traweek's release the moment she supposedly learned of his over[-]detention is not cognizable for purposes of negating DiBenedetto's entitlement to the broad qualified immunity afforded to officials in her position."[93] DiBenedetto maintains she is entitled to qualified immunity from suit, as her conduct was not objectively unreasonable under the jurisprudence.[94]

In response, Plaintiff reiterates his allegations[95] and contends that "[t]he Complaint is [] clear that Ms. DiBenedetto knew about Mr. Hicks' sentence, but actively prevented it from being executed properly."[96] Thus, Plaintiff maintains that qualified immunity should be denied as to DiBenedetto because she was also involved in the failure to properly credit Plaintiff with his court-ordered credit.[97]

DiBenedetto claims Plaintiff is not directly responsive to her qualified immunity argument; rather, Plaintiff focuses on an email to Lawson that purportedly "overcomes the qualified immunity defense of Ms. Dibenedetto."[98] DiBenedetto argues that her actions were reasonable in light of Louisiana Code of Criminal Procedure article 880(e), which DiBenedetto accurately described to Lawson when stating "under the same circumstances."[99] Additionally, DiBenedetto argues that Louisiana Code of Criminal Procedure article 901(C)(3) was another basis for her instruction to Lawson regarding the "hold."[100] According to DiBenedetto, she "never instructed Mr. Lawson, or anyone, to <u>deny</u> jail credit to the Plaintiff . . . Dibenedetto merely provided a correct statement of Louisiana

---

[93] *Id.* at 11–12 (quoting *Traweek v. Gusman*, No. 19-1384, 2021 WL 199387, at *4 (E.D. La. Jan. 20, 2021)).
[94] *Id.* at 12.
[95] Rec. Doc. No. 95, p. 6.
[96] *Id.*
[97] *Id.*
[98] Rec. Doc. No. 109, p. 8–9.
[99] *Id.* at 10.
[100] *Id.*

law."[101] DiBenedetto notes that qualified immunity applies even when there is an "error [that] is 'a mistake of law, mistake of fact, or a mistake based on mixed questions of law and fact.'"[102]

The Court finds that DiBenedetto's Motion to Dismiss on qualified immunity should be denied. At this stage, this Court need only consider the factual allegations and ask whether those allegations overcome the assertion of qualified immunity.

First, DiBenedetto's argument that "it is significant that there is a glaring absence of law that clearly establishes the parameters of what officials in Ms. DiBenedetto's position, *i.e.*, those who receive and respond to inmate grievances, are mandated to do in the circumstances under penalty of personal liability under § 1983,"[103] misses the mark because, as the Fifth Circuit has explained in this very case, "[a] reasonable DPSC employee also should have known to credit time served when calculating an inmate's release date, where the court ordered such credit to be considered. *See* La. Code Crim. Proc. Ann. art. 883.1."[104] Here, Plaintiff has alleged that DiBenedetto instructed Lawson on the application of credits to his sentence; thus, Plaintiff has alleged that DiBenedetto affirmatively participated in Plaintiff's over-detention. Clearly established law provides that a prison official must ensure an inmate's timely release.[105] DiBenedetto's alleged affirmative action of improperly instructing Lawson on applying Plaintiff's credits, despite a sentence clearly requiring "credit for all time served, including the time served in the

---

[101] *Id.*

[102] *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004)).

[103] Rec. Doc. No. 90-1, p. 11.

[104] *Hicks*, 832 Fed. App'x at 840.

[105] *Id.* at 841.

State of Arkansas," is sufficient to defeat DiBenedetto's claim of qualified immunity at this stage.

Additionally, the Court finds that Plaintiff's allegations against DiBenedetto "raise a reasonable hope or expectation ... that discovery will reveal relevant evidence of each element of a claim. 'Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed].'"[106] Evidence may later demonstrate that DiBenedetto's actions in this matter were objectively reasonable such that she is entitled to qualified immunity; however, based on the allegations, taken as true, the Court finds that Plaintiff's allegations against DiBenedetto overcome qualified immunity.  The need for discovery is obvious.  The following allegations raise questions as to the objective reasonableness of DiBenedetto's actions:  the necessity of multiple calculations and re-calculations; the lengthy delay in responding to and processing Plaintiff's ARP; and the ostensible lack of urgency to ensure that Plaintiff timely received his credits once it was finally determined that Plaintiff was entitled to them.  This is particularly true where "a jailer is under relatively little time pressure' and 'has the means, freedom, and the duty to make necessary inquiries.'"[107]

The Court also finds that this case is distinguishable from *Traweek* on this issue.[108] In *Traweek*, the plaintiff claimed that Dibenedetto "did nothing more than provide and

---

[106] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009)(quoting *Twombly*, 550 U.S. at 556)).
[107] *Thomas v. Gryder*, No. 17-1595, 2019 WL 5790351, at *7 (M.D. La. Nov. 6, 2019)(citations omitted).
[108] The Court notes that it has the discretion to adopt the analysis and reasoning of a sister court on one issue in a case and still disagree with that court's holding on a different issue in the case.  It is true that this Court relied on *Traweek* as to one issue in a previous ruling; however, the Court is not bound to adopt all analyses and reasoning as to all issues involved in *Traweek*.

conduct a half-hearted investigation after receiving emails from Mr. Traweeks' attorney that put her on notice of Mr. Traweek's overdetention."[109] Traweek also claimed bystander liability for "failing to intervene in defense of Traweeek's constitutional rights."[110] The allegations in this case are something different—that Dibenedetto affirmatively participated by instructing Lawson on the application of credits despite a clear order from the judge, and that DiBenedetto failed to adequately perform her own duty to timely address inmate grievances.

This Court addressed a similar fact pattern in *Thomas v. Gryder*.[111] In *Thomas*, Sally Gryder, also a Defendant in the present case, and other DOC employees were sued in a case of over-detention. The plaintiff alleged that he had been held 589 days past the end of his sentence.[112] The plaintiff alleged that the DOC originally calculated his release date correctly as June 15, 2015, but during his imprisonment, Gryder recalculated his release date four times.[113] By the fourth calculation, Gryder was "double checking" the plaintiff's release date when she noticed a problem between the Bill of Information and Sentencing Order, so she sought "clarification."[114] An investigation ensued, resulting in a new release date of February 28, 2017, after an erroneous finding that the plaintiff had been charged with sexual battery, a crime for which good time credits cannot apply.[115]

The plaintiff sent letters to Gryder and the Warden objecting to the new release date. He filed a motion for correction with the criminal court, and the court issued an Order

---

[109] *Traweek v. Gusman*, No. 19-1384, 2021 WL 199387, at *4 (E.D. La. Jan. 20, 2021).
[110] *Id.*
[111] 2019 WL 5790351.
[112] *Id.* at *1.
[113] *Id.* at *2.
[114] *Id.* at *3.
[115] *Id.*

in July 2016 correcting the issue.[116]  Gryder testified that she did not receive the order

until litigation ensued, but Plaintiff submitted a declaration saying he sent the order to her

on August 17, 2016.[117]  The plaintiff sent Brenda Acklin a copy of the letter and sentencing

transcript on December 5, 2016, and Gryder stated that she realized that the plaintiff

should have been released in "early December, 2016."[118] After receiving the transcript,

Gryder sent an email to the Assistant DA asking for an updated minute entry and

processed the plaintiff for release in January 2017.[119]  The plaintiff was finally released

on January 13, 2017.[120]

The Defendants moved for summary judgment,[121] and Gryder asserted the

defense of qualified immunity as to her individual capacity claims.  The Court found that,

> although Plaintiff disagrees that Ms. Gryder had sufficient cause to seek
> clarification of Plaintiff's sentence, it was objectively reasonable for Ms.
> Gryder to do so. It is undisputed that the Bill of Information and the
> Sentencing Order list the charges differently. If Plaintiff had been sentenced
> to five years (rather than two) for sexual battery, his correctly computed
> sentence would have resulted in a release date of February 28, 2017. The
> parties agree that the Defendants have an obligation to ensure that
> prisoners are not released early.[122]

The Court further found that,

> Because it was not objectively unreasonable for Ms. Gryder to seek
> clarification in the first place, it was not objectively unreasonable for Ms.
> Gryder to rely on that clarification once received. Moreover, "a prison
> official's failure to follow prison policies or regulations does not establish a
> violation of a constitutional right" and "negligent conduct does not implicate
> the due process clause." Here, where the amended minute entry and

---

[116] *Id.*

[117] *Id.*

[118] *Id.*

[119] *Id.* at *4.

[120] *Id.*

[121] The Court recognizes that this matter is not at the summary judgment stage, but the fact pattern and
legal principles applied in *Thomas* are instructive in this matter.

[122] *Thomas*, 2019 WL 5790351 at *7 (citation omitted).

confirmation from the DA occurred in response to Ms. Gryder's request for clarification, it would be especially inconsistent to require that Ms. Gryder continue to rely on the earlier Sentencing Order, and the Court finds that constitutional minima are met where Ms. Gryder sought to be more conscientious rather than less with respect to her calculation of Plaintiff's release date.[123]

However, the Court found that a genuine issue of material fact existed regarding the date on which Gryder knew the fourth recalculation was based on inaccurate information:

> While Ms. Gryder testified that she did not see the July 2016 Order until litigation commenced, Plaintiff has filed a Declaration stating that he sent the July 2016 Order to Ms. Gryder on August 17, 2016. Plaintiff was not released until almost five months after he allegedly provided Ms. Gryder with official, corrected information. In *Whirl*, the Fifth Circuit considered the liability of a jailer who had held plaintiff in jail almost nine months after dismissal of indictments against him. Notice of the dismissal was sent to the sheriff's office, but the sheriff testified that "he was not apprised of these proceedings." The Fifth Circuit found that the sheriff's ignorance for nine months after termination of proceedings against Whirl was unreasonable. Further, the court noted that "[f]ailure to know of a court proceeding terminating all charges against one held in custody is not, as a matter of law, adequate legal justification for an unauthorized restraint." While the question here is not as clear cut as that set out in *Whirl*, based on the timeline of "clarifications" from the criminal court and the Assistant DA, Plaintiff has raised a material issue of fact regarding when Ms. Gryder knew she had recalculated Plaintiff's release date based on incorrect information. Accordingly, while the Court finds that Ms. Gryder is entitled to qualified immunity for Plaintiff's over-detention from June 5, 2015 through August 17, 2016 and therefore summary judgment dismissing Plaintiff's claims against Ms. Gryder for that period of time is appropriate, a genuine issue of material fact precludes summary judgment in favor of Ms. Gryder for the time period of August 18, 2016 through January 13, 2017.[124]

Thus, the Court gave Gryder qualified immunity for acts that were objectively reasonable under her job description and duties; however, the Court found a fact issue

---

[123] *Id.* (citations omitted).
[124] *Id.* at *8.

regarding when Gryder knew or should have known of the correct information during a certain time period.

In *Parker v. Louisiana Department of Public Safety and Corrections*,[125] another Section of this Court relied heavily on *Thomas v. Gryder* in addressing a Rule 12(b)(6 Motion to Dismiss. *Parker* involved a claim of over-detention, and Brenda Acklin ("Acklin") was sued in her individual capacity as "a DOC employee who was tasked with calculating incarceration time ensuring Mr. Parker's proper release date."[126]  Parker alleged that he was held an additional 337 days in prison, despite numerous complaints and requests for relief by him, his family, and his lawyer.[127]  Parker alleged that his release date was properly calculated; however, when that date came, he was not released.[128]  Ultimately, Parker was held based on an erroneous classification that he was a sex offender.[129] Parker sought relief from the DOC, and his lawyer repeatedly tried to resolve the situation.[130]  Parker was finally released after 337 days of illegal imprisonment.[131]

Acklin moved for dismissal of Parker's constitutional claim against her, arguing that she was entitled to qualified immunity.[132]  Although Acklin knew Parker's correct release date when he was first incarcerated, she allegedly misinterpreted handwritten notes placed on paperwork, leading her to misclassify Parker as a sex offender.[133]  Parker also alleged that Acklin could have simply checked the sex offender database to discover that

---

[125]*Parker*, 2020 WL 4353564.
[126] *Id.* at *1 (internal quotation marks omitted).
[127] *Id.*
[128] *Id.* at *2.
[129] *Id.* at *2-*3.
[130] *Id.* at *3.
[131] *Id.* at *4.
[132] *Id.* at *9.
[133] *Id.* at *12

he was not a sex offender.  Because she failed to do so, "[t]his error directly led to his over-detention."[134]

In evaluating these allegations, Judge deGravelles held that:

Assuming these allegations to be true, a jury could reasonably conclude that Acklin had the correct information in Plaintiff's reports that he had never been convicted of a crime for which he had to register as a sex offender but that, despite this, Acklin made the notation in his file requiring him to have a residency plan as a sex offender.  This is critical because, in *Thomas*, the Court found that the defendant not entitled to qualified immunity for those days for which she allegedly had correct information about the plaintiff's release date.  *Thomas*, 2019 WL 5790351, at *7-8.  By the same reasoning, Acklin is not entitled to qualified immunity.[135]

Further, unlike *Thomas*, this is not an instance where Acklin was "more conscientious" about calculating Plaintiff's release date than would otherwise be required. Indeed, Thomas states that, according to the Fifth Circuit, "a jailer is 'under relatively little time pressure' and 'has the means, freedom, and the duty to make necessary inquiries.'" *Id*. at *7 (quotation omitted). This is critical because Plaintiff specifically alleges that a search of the relevant database would demonstrate that Plaintiff was not a sex offender, and a reasonable juror could conclude that, by failing to verify this information, Acklin breached her "duty to make necessary inquiries." *Id*.

It must be emphasized that the question is not whether Plaintiff will prevail at trial against Acklin. The only question at this stage is whether the Second Amended Complaint contains enough factual matter (taken as true) to raise a reasonable hope or expectation that discovery will reveal relevant evidence of each element of a claim. *Lormand,* 565 F.3d at 257. Plaintiff has met that burden at this stage. As alleged, Acklin's conduct was objectively unreasonable under clearly established law, so DPSC Defendant's motion must be denied.[136]

---

[134] *Id*.
[135] *Id*. at *13.
[136] *Id*.

Based on the cases discussed above,[137] both decided by this Court, the Court finds that DiBenedetto is not entitled to qualified immunity at this procedural stage. Discovery may later demonstrate that DiBenedetto acted objectively reasonably in her conduct, but the Court must accept the current allegations as true on this motion.

### b. Allegations as to Sally Gryder

In the present case, Gryder is named as "a DOC employee who supervised and trained Mr. Lawson at David Wade Correctional Center."[138] Plaintiff alleges, "[a]lthough Ms. Gryder reviewed Mr. Hicks' sentence, and time calculation, which included no Arkansas credit, she did not instruct him to include credit for time served in Arkansas."[139] Plaintiff alleges that Gryder ordered Lawson to re-calculate Plaintiff's sentence but, again, "no time served in Arkansas was included in this sentence."[140] Plaintiff further alleges that, "[a]lthough Ms. Gryder reviewed Mr. Hicks' sentence, and time calculation, which included no Arkansas credit, she did not instruct him to include credit for time served in Arkansas."[141] Furthermore, Lawson received a letter from Arkansas, and Gryder instructed Lawson to re-calculate Plaintiff's sentence yet again.[142]

Later, Gryder allegedly requested that Lawson contact "Faulker County Sheriff's Office to determine how much time Mr. Hicks spent incarcerated in Arkansas pre-trial."[143] Gryder re-calculated the release date and determined that Plaintiff was due for immediate

---

[137] The Court rejects Defendants' argument that these cases have nothing to do with the present case because Plaintiff herein asserts a simple claim challenging the computation of his sentence.  Inasmuch as the present case deals with the proper application of credits in reaching a correct release date, both *Gryder* and *Parker* are directly on point.

[138] Rec. Doc. No. 83, ¶ 15.

[139] *Id.* at ¶ 25.

[140] *Id.* at ¶ 26.

[141] *Id.* at ¶ 28.

[142] *Id.* at ¶ 34.

[143] *Id.* at ¶ 62.

release.[144] However, Plaintiff alleges that, "[e]ven though Ms. Gryder was aware that Ellis was over-detained on April 20, 2018, she manually changed his release date from April 20, 2018 to April 25, 2018, deliberately holding him for an additional five (5) days."[145]

Gryder argues that, with respect to the factual allegations surrounding the initial reviews of Lawson's calculation, she cannot be subject to liability since these events occurred before the alleged constitutional violation.[146] Further, with respect to instructing Lawson to call the Faulkner County Sheriff's Office and the re-calculation for immediate release, Gryder maintains that "[n]one of that conduct is objectively unreasonable in light of any clearly established jurisprudence."[147] Finally, Gryder contends, with respect to her addition of five days to the sentence, that the "conclusory allegations and minimal facts pled do not show conduct by Sally Gryder that was objectively unreasonable in light of clearly established law."[148]

In response, Plaintiff focuses on the manual changing of Plaintiff's release date.[149] Although Gryder states that the five days were to provide time to complete the procedure for release, Plaintiff notes that "five days is **250%** of what courts have found to be presumptively unconstitutional for the administrative tasks incident to release."[150] Plaintiff also relies on the following:

> The Court has been unable to find any case, whether within or outside of the Eleventh Circuit, in which the detainment of a properly identified individual for days beyond his scheduled release date was held constitutionally permissible. . . . Accordingly, based on the arguments and

---

[144] *Id.* at ¶ 63.
[145] *Id.* at ¶ 66.
[146] Rec. Doc. No. 90-1, p. 15–16.
[147] *Id.* at 16.
[148] *Id.* at 17.
[149] Rec. Doc. No. 95, p. 6–7.
[150] *Id.* at 7 (citing Rec. Doc. No. 90-1, p. 17; *Barnes v. District of Columbia*, 793 F.Supp. 2d 260 (D.D.C. 2011); *Lewis v. O'Grady*, 853 F.2d 1366, 1370 (7th Cir. 1988); *Young v. City of Little Rock*, 249 F.3d 730 (8th Cir. 2001); *Green v. Baca*, 306 F.Supp. 2d 903 (C.D .Cal. 2004))(original emphasis).

record currently before the Court, dismissal of Plaintiffs' over-detention claims on qualified immunity grounds would be improper.[151]

In reply, Gryder claims that the pertinent issue is not the length of the delay, but rather the Plaintiff's statement that the delay was without reason.[152]  As a result, the limited question that remains is why Gryder changed the release date, and Gryder requests that this Court withholds its ruling on this issue and order narrowly tailored discovery on why Gryder changed the release date.[153] The Court agrees that discovery is necessary to determine her entitlement to qualified immunity.

The Court finds that Gryder's Motion to Dismiss must be DENIED. Plaintiff has alleged facts suggesting that Gryder knew that Plaintiff was entitled to immediate release. Instead of releasing Plaintiff, Gryder allegedly altered the release date, thereby holding Plaintiff for five extra days. Plaintiff cites to persuasive authority indicating that five days is unreasonable for processing delays. Gryder provides no other explanation for the addition of the five days, aside from the admission that "the facts suggest it was changed to provide Terry Lawson with time to complete the release clearing checklist."[154] Thus, Plaintiff has sufficiently alleged facts that, if proven, will show that Gryder knowingly over-detained Plaintiff in violation of the law.

### c.  Allegations as to Angela Griffin

Griffin is named as Gryder's and Lawson's superior who works from DOC Headquarters.[155] Plaintiff alleges that "Griffin was aware that Mr. Hicks had not been properly credited for his time served in Arkansas, yet she failed to instruct Ms. Gryder,

---

[151] *Id.* (quoting *Powell v. Barrett*, 376 F.Supp.2d 1340, 1354 (N.D. Ga. 2005)).
[152] Rec. Doc. No. 109, p. 11 (citing *Traweek v. Gusmand*, 414 F.Supp. 3d 847, 867 (E.D. La. 2019)).
[153] *Id.* at 11–12.
[154] Rec. Doc. No. 90-1, p. 17.
[155] Rec. Doc. No. 83, ¶ 16.

Mr. Lawson, or any other DOC employee to recalculate with the proper credits at any time prior to April 2018, when Ellis had already been over-detained."[156]

Griffin argues that Plaintiff has made inconsistent, contrary allegations that "Griffin instructed Lawson to recalculate Plaintiff's sentence in 2017 after a jail credit letter was sent from Arkansas to Lawson on July 3, 2017."[157] Griffin notes that Plaintiff admits that "some of the time Mr. Hicks served in Arkansas" was credited in that new sentence calculation, but that Plaintiff does not allege whether he was fully credited.[158] Based on these allegations, Griffin contends that it is Lawson who knew of the extra 110 days of credit; Plaintiff does not allege that Griffin was informed of the extra 110 days of credit.[159] Additionally,  Griffin "had no further involvement until April 20, 2018."[160]

Next, Griffin argues that her knowledge that Plaintiff was due for immediate release in April of 2018 came from Gryder.[161]  Plaintiff alleges that Griffin requested that Lawson contact the Faulkner County Sheriff's Office to determine "how much time Mr. Hicks spent incarcerated in Arkansas pre-trial."[162] While Plaintiff alleges that Gryder emailed Griffin to let her know that Plaintiff was due for immediate release, there is no allegation that Griffin knew that Gryder "manually changed his release date from April 20, 2018 to April 25, 2018, deliberately holding him for an additional five days."[163] Griffin contends that the same allegations were made against LeBlanc, but they were dismissed by the Fifth Circuit.[164]

---

[156] *Id.* at ¶ 67.
[157] Rec. Doc. No. 90-1, p. 12 (quoting Rec. Doc. No. 83, ¶ 34).
[158] *Id.* (quoting Rec. Doc. No. 83, ¶ 35).
[159] *Id.*
[160] *Id.*
[161] *Id.* at 13.
[162] *Id.* (quoting Rec. Doc. No. 83, ¶ 62).
[163] *Id.* (quoting Rec. Doc. No. 83, ¶ 66).
[164] *Id.* at 13–14.

In response, Plaintiff discusses a failure-to-intervene theory.[165] Plaintiff cites to *Whitney v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013), which states that bystander liability applies when defendant: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."[166] Thus, Plaintiff maintains that the *Motion* should be denied on this ground.

In reply, Griffin claims "Plaintiff does not respond to any of the arguments raised by Defendant Angela Griffin."[167] Griffin also notes the glaring absence of cases in which courts have found bystander liability for a sentence miscalculation.[168] Thus, Defendants maintain that the *Motion* should be granted.

First, the Court rejects Plaintiff's failure-to-intervene argument; Plaintiff has not alleged such a claim, and it is axiomatic that "reply briefs cannot be used to raise new arguments."[169] The Court will disregard any arguments as to this theory.

As discussed above, the Fifth Circuit stated in this case, "[a] supervisory official may be held liable only if (1) [s]he affirmatively participates in the acts that cause the constitutional deprivation, or (2) [s]he implements unconstitutional policies that causally result in the constitutional injury."[170] The Plaintiff has failed to allege that Griffin affirmatively participated in the constitutional deprivation or that Griffin was a policymaker. As noted by Defendants, Plaintiff does not allege that Griffin was aware of the initial omission of 110 days of credit, nor of Plaintiff's later over-detention by Gryder after

---

[165] Rec. Doc. No. 95 p. 8.
[166] *Id.*
[167] Rec. Doc. No. 109, p. 8.
[168] *Id.*
[169] *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016)(citation omitted)
[170] *Hicks v. LeBlanc*, 832 F.App'x. 836, 841 (5th Cir. 2020).

Plaintiff was due for immediate release. In fact, Plaintiff's allegations suggest that Griffin's involvement effectuated his release.  Based on these allegations, Plaintiff has failed to overcome Griffin's assertion of the defense of qualified immunity, and Griffin's motion as to the constitutional claims asserted against her is GRANTED.

2. <u>False Imprisonment/Negligence Claims against New Defendants</u>

New Defendants contend Plaintiff cannot meet the essential element of actual detention by each Defendant in proving the tort of false imprisonment.[171] According to New Defendants, Plaintiff has not alleged facts showing that "Plaintiff was imprisoned, detained, or held by Angela Griffin, Sally Gryder, or Tracy Dibenedetto.[172] Thus, New Defendants maintain that the false imprisonment claims must be dismissed.

Plaintiff claims this argument was already made by Original Defendants and rejected by this Court.[173] "This Court held that Defendant Lawson's involvement with Mr. Hicks' time computation and release process was sufficient to state a claim for false imprisonment, but that it 'is up to the jury to determine which Defendants are liable, in what capacity, and in what proportions.'[174]

In reply, New Defendants suggest that Plaintiff has a single cause of action under Louisiana law.[175] They argue that Plaintiff's state law claims are an amalgamation of false imprisonment and negligence; thus, they should be considered under a duty-risk analysis.[176] As a result, New Defendants maintain that the claim of false imprisonment should be dismissed.

---

[171] Rec. Doc. No. 90-1, pp. 18-19
[172] *Id.*
[173] Rec. Doc. No. 95, p. 8.
[174] *Id.* at 8–9 (quoting Rec. Doc. No. 93, p. 14).
[175] Rec. Doc. No. 109, p. 12–13.
[176] *Id.* at 13.

As to negligence, New Defendants contend that, although Plaintiff alleges that all Defendants owed him the "duty to effect his timely release," each of the Defendants hold different positions and, thus, owe different duties.[177] Additionally, New Defendants contend that "there is absolutely no indication that any one of the persons sued held the authority to order Plaintiff's release from the physical custody of the parish sheriff."[178]

Plaintiff maintains that "[t]he Amended Complaint's factual allegations that [New] Defendants were each involved in Mr. Hicks' time computation and release process, when combined with the undisputed fact that he was over-detained by two months, is (sic) sufficient to at least state a claim for negligence."[179] Plaintiff contends that "[i]t should be up to the jury to determine which Defendants are liable, in what capacity, and in what proportion for the state law torts."[180]

### a. Analysis

"Under Louisiana law, '[f]alse imprisonment is the unlawful and total restraint of the liberty of the person.'"[181] "It consists of the following two essential elements: (1) detention of the person; and (2) the unlawfulness of the detention."[182]

The *Parker* defendants made essentially the same argument as New Defendants herein regarding maintaining both a false imprisonment and a negligence claim. The Court stated that it "laments Plaintiff's lumping together of all Defendants together in his counts, [but] Plaintiff has adequately put [Defendants] on notice of the allegations against

---

[177] Rec. Doc. No. 90-1, p. 19.
[178] *Id.* at 19–20.
[179] Rec. Doc. No. 95, p. 9.
[180] *Id.*
[181] *Hernandez v. Theriot*, 709 F. App'x 755, 757–58 (5th Cir. 2017) (quoting *Kelly v. W. Cash & Carry Bldg. Materials Store*, 745 So. 2d 743, 750 (La. Ct. App. 1999) (emphasis omitted) (quoting *Crossett v. Campbell*, 122 La. 659, 48 So. 141, 143 (1908))).
[182] *Id.* (quoting *Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 690 (La. 2006))

them and has sufficiently described the basis for imposing liability for this claim."[183]   The Court denied the motion to dismiss the false imprisonment claim, finding that "[a]t the very least, the complaint, on its face, contains enough factual matter, when taken as true, to raise a reasonable expectation that discovery will reveal relevant evidence of each element of the claim.[184]

The Court finds in the present case that Plaintiff has adequately pled a claim for false imprisonment against these Defendants.  In each New Defendants' role as a DOC employee, they are charged with the responsibility of ensuring an inmate's timely release. Based on the Court's prior rulings in this matter, it is an established fact that Plaintiff was held beyond his release date;[185] thus, he was incarcerated for 60 days beyond his correct release date without legal authority.  Additionally, the Court finds that the nature of each Defendant's specific conduct and authority with regard to Plaintiff's detention is better ascertained following discovery.  Here, Plaintiff has alleged enough to survive dismissal of his false imprisonment claim against the New Defendants.

Regarding negligence claims, the Court in *McNeal v. Louisiana Department of Public Safety and Corrections*[186] dispensed with Defendants' argument that, following the Court's grant of summary judgment in favor of Plaintiff on the false imprisonment claim, Plaintiff's other state law claims became moot.[187]   The Court held, "[i]mportantly, Defendants fail to cite any law for the proposition that because this Court granted Plaintiff summary judgment on one Louisiana law claim, that the others are now moot.

---

[183] *Parker v. Louisiana Dept. of Public Safety & Corrections*, No. 18-1030-JWD-EWD, 2021 WL 2697528, at *6.
[184] *Id*. (citing *Lormand*, 565 F.3d at 257).
[185] *See* Rec. Doc. No. 93, p. 7.
[186] *McNeal v. DPSC,* No. 18-736-JWD-EWD, 2020 WL 7059581 (M.D. La. Dec. 2, 2020).
[187] *Id*. at *12.

Additionally, under the Federal Rules, a plaintiff is allowed to plead in the alternative. Fed. R. Civ. P. 8(d)(2)."[188]  The Court rejects this argument asserted by the New Defendants herein for the same reason.

Also, while Defendants claim Plaintiff has failed to articulate the specific duties each New Defendant owed to Plaintiff that was allegedly breached, the Fifth Circuit in this case has already identified the duty owed by those in the positions of New Defendants: "A reasonable DPSC employee also should have known to credit time served when calculating an inmate's release date, where the court ordered such credit to be considered."[189]  It is alleged that each New Defendant played some part in investigating and/or recalculating Plaintiff's release date and failed to ensure his legal release after application of 110 days of credit.

The New Defendants' Motion to Dismiss false imprisonment and negligence claims is DENIED.

## V.    CONCLUSION

For the reasons set forth above, the Motion to Dismiss Second Amended Complaint[190] by LeBlanc and Lawson is GRANTED in part and DENIED in part.  All federal claims against LeBlanc are dismissed with prejudice.  The Motion to Dismiss state law claims against LeBlanc and Lawson is DENIED.

New Defendants' Motion to Dismiss for Failure to State a Claim[191] is GRANTED in part and DENIED in part.  The motion to dismiss constitutional claims based on qualified immunity is DENIED as to DiBenedetto and Gryder.  The motion to dismiss constitutional

---

[188] *Id.*
[189] *Hicks*, 832 Fed. App'x at 840.
[190] Rec. Doc. No. 84.
[191] Rec. Doc. No. 90.

Document Number: 70384                                    Page 33 of 34

claims based on qualified immunity as to Griffin is GRANTED. These claims are dismissed without prejudice. The motion to dismiss state law claims against Tracy DiBenedetto, Sally Gryder, and Angela Griffin is DENIED.

Because this was the first Complaint containing allegations against Griffin, Plaintiff shall have limited, narrow leave to amend the Complaint as to Griffin, only. Plaintiff shall not add new parties or new claims, without prior leave of Court and for good cause shown. Amendment is allowed solely to attempt to cure the deficiencies as to the constitutional claims asserted against Griffin. Should Plaintiff choose to amend as to Griffin, Plaintiff shall also, contemporaneous with the Amended Complaint, file a Rule 7(a) response to Griffin's assertion of qualified immunity. Plaintiff must file the Amended Complaint and Rule 7(a) response on or before April 13, 2022. No extensions of time shall be granted.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 30th day of March, 2022.


_Shelly D. Dick_
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**