UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ELLIS RAY HICKS** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO.:  3:19-cv-00108-SDD-RLB** |
| | * | |
| **LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS, ET AL.** | * * * | **JUDGE SHELLY D. DICK** |
| | * | **MAGISTRATE JUDGE RICHARD L. BOURGEOIS** |

*************************************************************************

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NOW INTO COURT, through undersigned counsel, come defendants, Secretary LeBlanc, Angela Griffin, Terry Lawson, Tracy DiBenedetto, and Sally Gryder, who file this Motion for Summary Judgment.

Hicks cannot overcome Defendants' entitlement to qualified immunity on this record. That is principally because the evidence does not support Hicks' allegations of deliberate indifference. To the contrary, the evidence attached establishes that Hicks' time computation was properly calculated, in accordance with the sentencing order and based upon the information provided to DPSC by the Arkansas Department of Corrections. As such, Defendants Lawson, Dibenedetto and Gryder[1] are entitled to qualified immunity.

As to the state law claims against all defendants, Hicks' claims likewise fail. Hicks cannot support a negligence or false imprisonment claim, and Defendants are entitled to immunity under state law. Defendants pray that they motion for summary judgment be granted.

**I.     Procedural Background**

On January 16, 2019, Plaintiff filed his petition in the 19th Judicial District Court in the State of Louisiana. R. Doc. 1-2. Plaintiff named the Louisiana Department of Public Safety and

---

[1] The remaining claims against LeBlanc and Griffin are state law claims only.

Corrections, James Leblanc, and Terry Lawson as defendants, bringing 42 U.S.C. § 1983 and Louisiana state law claims alleging overdetention. R. Doc. 1-2. On February 20, 2019, Defendants filed a notice of removal in the Middle District of Louisiana. R. Doc. 1. Following initial motion practice, the Fifth Circuit held that Secretary LeBlanc was entitled to qualified immunity for federal law claims, but held that Plaintiff's complaint sufficiently stated a claim against Defendant Lawson.

On June 21, 2021, Tracy DiBenedetto, Sally Gryder, and Angela Griffin were added as new defendants. R. Doc. 89, 89-1, 89-2. On August 5, 2021, defendants Tracy DiBenedetto, Sally Gryder, and Angela Griffin filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). R. Doc. 90. The Fifth Circuit Court of Appeals affirmed the denial of Defendants' DiBenedetto and Gryder's qualified immunity defense at the motion to dismiss stage, and upheld Griffin's entitlement to qualified immunity. R. Doc 131.

Following the initial motion practice, these federal law claims remain:

- Section 1983 claim under the 14th Amendment against Terry Lawson, Sally Gryder and Tracy Dibenedetto.
- Section 1983 claim under the First Amendment against Terry Lawson.

The remaining claims against Secretary LeBlanc and Angela Griffin are limited to state law tort claims. See R.Doc. 88, R.Doc. 83, R.Doc. 120.

## II.     Pertinent Factual Background

The allegations in Plaintiffs' Complaint center around an alleged failure to follow the judge's sentencing order to apply credit for time served in Arkansas. These allegations are not supported by the evidence.

In November 2009, Plaintiff was sentenced for a 2nd degree battery charge to five years hard labor, suspended, with five years supervised probation.[2] On July 25, 2016, Plaintiff was arrested, violating his probation. On January 3, 2017, his probation was revoked. His previous sentence of five years was amended to four years with credit for time served, including the time served in the State of Arkansas.[3]

Plaintiff's pre-class packet was received by DPSC on February 8, 2017 and his initial time computation was performed. Plaintiff's time was calculated based on the jail credit letter received from Claiborne Parish. However, the initial time computation contained an error in that it was calculated to include time in custody from the date of probation to date of second arrest in 2012.[4] This was corrected in March 2017 to provide the following jail credits:

- 5/19/2008 arrest to 5/23/2008 bond (4 days of jail credit) – initial arrest
- 3/27/2012 arrest to 5/23/2013 bond (422 days of jail credit)
- 7/25/2016 arrest to 1/3/2017 revocation (162 days of jail credit) – arrest to probation revocation
- Total: 588 days[5]

In July 2017, DPSC received a letter from the Arkansas Department of Corrections, which provided jail credit from March 11, 2015 to January 21, 2016, resulting in 316 days of credit.[6] Plaintiff's time computation was reworked based on that jail credit provided by Arkansas Department of Corrections. Based on the information provided by local facilities, Hicks was awarded jail credits as follows:

- 5/19/2008 arrest to 5/23/2008 bond (4 days of jail credit)
- 3/27/2012 arrest to 5/23/2013 bond (422 days of jail credit)
- 3/1/2015 arrest to 1/21/2016 bond for time served in Arkansas (316 days of jail credit)

---

[2] See Exhibit 1, Pre Class and Time Computation, pg. 31.
[3] See Exhibit 1, Pre Class and Time Computation, pg. 30.
[4] See Exhibit 2, Updated Information on Time Computation; See also See Exhibit 1, Pre Class and Time Computation, pg. 8.
[5] See Exhibit 1, Pre Class and Time Computation, pg. 9.
[6] See Exhibit 1, Pre Class and Time Computation, pg. 25.

- 7/25/2016 arrest to 1/3/2017 revocation (162 days of jail credit)
- Total – 904 days of jail credit[7]

While Plaintiff alleges that he was not awarded time served in Arkansas, the time computations show that <u>Plaintiff was in fact awarded 316 days of credit, as set forth by the letter from the Arkansas Department of Corrections</u>.[8] In September 2017, DPSC responded to Hicks' May 2017 ARP wherein Hicks asserted he had not received Arkansas credit. The ARP response stated that Hicks had in fact received the Arkansas jail credit, as reflected in the July 2017 time computation.[9]

In April 2018, counsel for Plaintiffs requested that DPSC look into Plaintiff's time computation, again asserting that the Arkansas jail credits were not applied. Despite the fact that the Arkansas Department of Corrections letter stated that Hicks was only incarcerated for 316 days in Arkansas, Defendant Lawson continued to investigate called a specific county in Arkansas to inquire about any additional jail credits.[10] It was not until April 20, 2018, that Faulkner County disclosed two additional incarceration periods for Plaintiff, in addition to the 316 days of jail credit previously applied and included on the letter from the Arkansas Department of Corrections.[11] Based on the new information provided by Faulkner County, Hicks was awarded jail credits as follows:

- 5/19/2008 arrest to 5/23/2008 bond (4 days of jail credit)
- 3/27/2012 arrest to 5/23/2013 bond (422 days of jail credit)
- 1/4/2014 arrest to 3/8/2014 bond in Faulkner County Arkansas (63 days of jail credit)
- 1/1/2015 arrest to 3/1/2015 bond Faulkner County Arkansas (59 days of jail credit)
- 3/1/2015 arrest to 1/21/2016 bond for time served in Arkansas (316 days of jail credit)
- 7/25/2016 arrest to 1/3/2017 revocation (162 days of jail credit)

---

[7] See Exhibit 1, Pre Class and Time Computation, pg. 17.
[8] See Exhibit 1, Pre Class and Time Computation, pg. 25; See Exhibit 1, Pre Class and Time Computation, pg. 13.
[9] Exhibit 3, ARP and response.
[10] See Exhibit 2, Updated Information on Time Computation.
[11] See Exhibit 4, Griffin Response to Interrogatory No. 3; Exhibit 5 Gryder Response to Interrogatory No. 10; See Exhibit 2, Updated Information on Time Computation.

4

- Total –1036 days of jail credit[12]

Each time Plaintiff's time was calculated, Lawson correctly applied the jail credits based upon information in DPSC's possession at the time.

Plaintiff's time was re-calculated to include the jail credits disclosed by Arkansas (for the first time) on April 20, 2018. Plaintiff was released on April 25, 2018.

### III. Legal Standard

The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Edwards v. City of Balch Springs*, 70 F.4th 302, 307 (5th Cir. 2023). A dispute over a fact is "material" if it "might affect the outcome of the suit under the governing law." *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016). The dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Because Defendants "invoke[d] qualified immunity," Plaintiff bears "the burden 'to show that the defense is not available, though [the court] still draw[s] all inferences in [his] favor.'" *James v. Cleveland Sch. Dist.*, 45 F.4th 860, 864 (5th Cir. 2022). In other words, Plaintiff "must rebut" both prongs of the defense: "whether an official's conduct violated a constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). To do so, Plaintiff must "identify specific evidence in the summary judgment record." *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016). If Plaintiff fails to meet his burden, summary judgment is proper. See *Jason v. Tanner*, 938 F.3d 191, 199 (5th Cir. 2019).

---

[12] See Exhibit 1, Pre Class and Time Computation, pg. 21.

### IV. Defendants' Are Entitled to Qualified Immunity on This Record

Under the doctrine of qualified immunity, government officials acting within their discretionary authority are immune from civil liability for damages if their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Flores v. City of Palacios*, 381 F.3d 391, 393-394 (5th Cir. 1984). The qualified immunity defense affords government officials not just immunity from liability, but immunity from suit. *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 525-26 (1985)). Qualified immunity allows officials the freedom to exercise fair judgment, protecting "all but plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Actions and decisions made by officials that are merely inept, erroneous, ineffective or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity. *Alton v. Texas A&M University*, 168 F.3d 196, 201 (5th Cir. 1999). The defense of qualified immunity must be resolved at the earliest possible stage of litigation since it entails an immunity from suit and entitlement not to stand trial or face other burdens of litigation. *Pearson v. Callahan* 555, U.S. 223, 232 (2009).

The qualified immunity defense has two prongs: (1) whether an official's conduct violated a constitutional right of the plaintiff; and (2) whether the right was clearly established at the time of the violation. *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir.2009). A court may rely on either prong of the defense in its analysis. *Id.* In addition, in order to show a constitutional injury, plaintiff has the burden to prove deliberate indifference. "[D]eliberate indifference is a stringent standard of fault". *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). It does not amount to mere "inept, erroneous, ineffective, or negligent" conduct, but instead "more than negligence or even gross negligence". *Estate of Davis*, 406 F.3d at 381.

6

The federal law claims are brought against Lawson, Gryder and DiBenedetto only. Those defendants are entitled to qualified immunity.

**1. Lawson is entitled to Qualified Immunity**

Plaintiff alleges that Lawson refused to give Hicks "judge-ordered" credit for time served in Arkansas and refused to enforce the order of the sentencing judge. R.Doc. 83, para. 5, 8, 24. These allegations are not supported by the evidence.

Based upon the initial time computation and information received in Plaintiff's pre-class packet, Plaintiff was given credit for time served in Louisiana in accordance with the jail credit letter provided by Claiborne Parish.[13] On July 3, 2017, Plaintiff's time was recalculated to add additional jail credit from Arkansas once DPSC received a letter from the Arkansas Department of Corrections showing 316 days of jail credit.[14] Plaintiff acknowledges that Lawson applied the 316 days of Arkansas jail credits in accordance with the letter from the Arkansas DOC, but alleges that Lawson did not calculate 110 days of "pre-trial credit." This alleged 110 days of missing pretrial credits are not listed in the official letter from the Arkansas Department of Corrections.[15] Lawson cannot be deliberately indifferent in applying the credits provided by the Arkansas Department of Corrections. Based upon the information provided by the Arkansas DOC, and the sentencing order from the judge, Lawson did in fact apply the Arkansas jail credits.

It was not until April 2018 that Faulkner County advised Lawson in a telephone call that Hicks served additional time in Arkansas during two different incarceration periods, neither of which were included in the letter from Arkansas Department of Corrections.[16] Lawson cannot be deliberately indifferent because a separate out of state entity provided incorrect jail credits. Based

---

[13] See Exhibit 2, Updated Information on Time Computation.
[14] See Exhibit 1, Pre Class and Time Computation, pg. 25; See Exhibit 1, Pre Class and Time Computation, pg. 13.
[15] See Exhibit 1, Pre Class and Time Computation, pg. 25
[16] See Exhibit 1, Pre Class and Time Computation, pg. 25; See Exhibit 2, Updated Information on Time Computation.

upon the information in DPSC and Lawson's possession, Lawson followed the sentencing order and applied the out of state Arkansas jail credits.

The remaining allegations regarding Lawson's time computations center around alleged errors, which did not affect Hicks' release date, nor does alleged negligence evidence deliberate indifference. *Estate of Davis*, 406 F.3d at 381.

### 2. Tracy DiBenedetto is entitled to qualified immunity

Plaintiff's allegations against Defendant Dibenedetto solely concern her review of Hicks' ARP. Hicks alleges that Tracy Dibenedetto reviewed Hicks' ARPs and alleges that "[d]espite knowing that [Hicks] was not being credited with a single day of Arkansas time, Ms. Dibenedetto failed to instruct DOC employees to take action and correct Ellis's time, or to recalculate the time herself." R.Doc. 83, para. 30.

This allegation is simply false. First, Defendant Dibenedetto did not even prepare the ARP response for Hicks' ARP; DPSC employee Swaantje Hoffman did.[17] Further, As shown by the September 17, 2017 ARP response, Hicks' time computation included the jail credit from Arkansas in accordance with the jail credit letter from Arkansas Department of Corrections.[18] The time computation from July 3, 2017 provided 316 days of jail credit from Arkansas, in accordance with the Arkansas Department of Corrections' letter that provided jail credit from March 11, 2015 to January 21, 2016.[19] Plaintiff cannot show that Tracy Dibenedetto participated in the alleged overdetention where: (1) she did not prepare the ARP response; and (2) based on the information DPSC received from the Arkansas Department of Corrections, Hicks received all credit for time served in accordance with the judge's order. As such, Dibenedetto is entitled to qualified immunity.

---

[17] Exhibit 6, Dibenedetto Interrogatory Response No. 3.
[18] Exhibit 3, ARP Response; See Exhibit 2, Pre Class and Time Computation, pg. 13.
[19] See Exhibit 1, Pre Class and Time Computation, pg. 25

### 3. Sally Gryder is entitled to qualified immunity

Plaintiff alleges that prior to July 2017, Gryder reviewed Hicks' time computation, which included no Arkansas credit, and did not instruct him to include credit for time served. R.Doc. 83, para 25, 28. Plaintiff also alleges that Gryder deliberately pushed his release date from April 20 to April 25. R.Doc. 83, para. 66.

At the outset, Ms. Gryder did not become a supervisor, and did not supervise Mr. Lawson, until August 2017.[20] By August 2017, the Arkansas Department of Corrections had provided the jail credit letter indicating 316 days of jail credit, which was applied to Hicks' time computation.[21] Plaintiff's allegations regarding Gryder's supervision are simply incorrect.

Second, Plaintiff failed to show that Gryder deliberately moved his release date or that she was deliberately indifferent. To the contrary, as the Fifth Circuit has recently held in *Crittindon*, the majority found that "courts have declined to define the amount of [administrative] delay that is reasonable." *Crittindon*, 37 F.4th at 188 (citing *Berry v. Baca*, 379 F.3d 764, 771 (9th Cir. 2004) ("Courts have not settled on any concrete number of permissible hours of delay in the context of post-release detentions.")). Thus, even assuming holding Hicks for an additional five days violated his constitutional rights, the law was not clearly established in 2018 that a five-day delay, which included the weekend, was objectively unreasonable. Gryder is entitled to qualified immunity.

### V. Plaintiff Cannot Prove a First Amendment Claim Against Lawson

Under the First Amendment, a prison official may not harass or retaliate against an inmate "for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995) (citations omitted). "To prevail

---

[20] See Exhibit 5, Gryder Interrogatory Responses; See also See Exhibit 2, Updated Information on Time Computation, listing Acklin as supervisor in the February, March and July time computations.
[21] See Exhibit 1, pg. 13, showing Arkansas jail credit from March 11, 2015 to January 21, 2016. See also Exhibit 2, Updated Information on Time Computation

9

on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *DeMarco v. Davis*, 914 F.3d 383, 388 (5th Cir. 2019) Causation, in turn, requires a showing that "but for the retaliatory motive the complained of incident ... would not have occurred." *McDonald*, 132 F.3d at 231 (quoting *Johnson*, 110 F.3d at 310).

That standard places a "significant burden" on an inmate as the court must regard claims of retaliation "with skepticism." *Woods*, 60 F.3d at 1166 (citation omitted). Mere conclusional allegations are insufficient to support a retaliation claim. *Id*. Instead, an inmate "must produce direct evidence of motivation" or "allege a chronology of events from which retaliation may plausibly be inferred." *Id*. (citations omitted).

Plaintiff makes unsupported allegations that Lawson extended Hicks' release date in retaliation for filing ARPs. R.Doc. 83, para. 105. However, as described above, the evidence shows that Lawson computed Hicks' time and Hicks' Arkansas pre-trial credits based on the information provided by Arkansas DOC. This alleged 110 days of "missing" pretrial credits are not listed in the official letter from the Arkansas Department of Corrections.[22] In April 2018, Faulkner County advised Lawson in a telephone call that Hicks served additional time in Arkansas during two different incarceration periods, neither of which were included in the letter from Arkansas Department of Corrections.[23] Those credits were then immediately applied to Hicks' time computation. Plaintiff cannot establish an intent to retaliate, a retaliatory adverse act, or causation.

---

[22] See Exhibit 1, Pre Class and Time Computation, pg. 25
[23] See Exhibit 1, Pre Class and Time Computation, pg. 25; See Exhibit 2, Updated Information on Time Computation.

## VI. Defendants are Entitled to Summary Judgment on State Law Claims

Hicks also cannot sustain his negligence claims against any defendant for at least two reasons. *First*, by his own admission, Hicks attacks the policies and trainings offered by Defendants. But Louisiana law precludes liability "on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." La. Rev. Stat. § 9:2798.1. Plaintiff's allegations fall squarely within Louisiana's discretionary immunity. Defendants are therefore immune from the state-law negligence claims.

Further, Hicks failed to provide any evidence on the elements of his negligence claim against Defendants. Under Louisiana law, Hicks must prove (1) each defendant had a duty to conform his conduct to a specific standard of care; (2) the defendant failed to conform his conduct to the appropriate standard; (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries; (4) the substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. *Mathieu v. Imperial Toy Corp.*, 94–0952, pp. 4–5 (La.11/30/94), 646 So.2d 318, 322; *see* La. Civ. Code art. 2315 (duty-risk analysis). As discussed above, Hicks' time was calculated based on information provided by Arkansas DOC. Arkansas DOC provided information that Hicks has 316 days of jail credit. The additional 110 days of pre-trial credit were not provided to Defendants until April 2018. Those credits were applied and Hicks was released. As a result, Hicks' negligence claim fails on the merits.

Lastly, as to the state law false imprisonment claim, this likewise fails. The tort of false imprisonment or false arrest consists of the following two essential elements: (1) detention of the person; and (2) the unlawfulness of the detention. *Plessy v. Hayes Motor Co.*, Inc., 31,974 (La.App.2d Cir.6/16/99), 742 So.2d 934, 938; *Tabora v. City of Kenner*, 94–613 (La.App. 5th Cir.1/18/95), 650 So.2d 319, writ denied, 95–0402 (La.3/30/95), 651 So.2d 843. False

11

imprisonment or arrest occurs when one arrests and restrains another against his will without warrant or other statutory authority. *Kyle v. City of New Orleans*, 353 So.2d 969 (La.1977); *Plessy*, supra; *Anderson v. Wal–Mart Stores, Inc.*, 95–1026 (La.App. 5th Cir.5/15/96), 675 So.2d 1184.

However, when officers act pursuant to statutory authority in arresting and incarcerating a citizen, they are not liable for damages for false arrest or imprisonment. *Wolfe v. Wiener Enterprises, Inc.*, 94–2409 (La.1/13/95), 648 So.2d 1293, rehearing denied, 94–2409 (La.2/17/95), 650 So.2d 258; *Kyle*, supra.; *Rodriguez v. Deen*, 33,308 (La.App.2d Cir.5/10/00), 759 So.2d 1032, 1035, writ denied, 2000–1414 (La.6/23/00), 765 So.2d 1049. To assess whether an officer is liable for false arrest and false imprisonment, courts look to whether "the facts and circumstances within the arresting officer's knowledge, and of which he has reasonably trustworthy information, are sufficient to justify an average man of caution in the belief that a felony has been committed." *Wolfe v. Wiener Enters., Inc.*, 94-2409 (La. 1/13/95), 648 So. 2d 1293, 1295. As such, courts look to the <u>reasonableness</u> of an officer's actions in determining liability for false imprisonment.

Here, it is undisputed that the Arkansas Department of Corrections provided a jail credit letter indicating 316 days of credits.[24] This letter did not include the 110 days of "missing" pretrial credits. It was not until April 18, 2018, that Faulkner County disclosed two additional incarceration periods for Plaintiff, in addition to the 316 days of jail credit previously applied and included on the letter from the Arkansas Department of Corrections.[25] Those credits were then applied. It cannot be said that Defendants acted "unreasonably" in applying credits in accordance with the information provided by Arkansas Department of Corrections, and therefore the false imprisonment claim fails.

---

[24] See Exhibit 1, Pre Class and Time Computation, pg. 25.
[25] See Exhibit 4, Griffin Response to Interrogatory No. 3; Exhibit 5 Gryder Response to Interrogatory No. 10; See Exhibit 2, Updated Information on Time Computation.

Because Defendants are immune and—in all events—Hicks has failed to support his negligence or false imprisonment claims with any evidence, the Court should grant Defendants summary judgment on the remaining state-law claims as well.

VII.   **Conclusion**

On this record, there are no genuine disputes of material fact precluding judgment as a matter of law in Defendants' favor, the Court should grant Defendants summary judgment.

Respectfully submitted,

**LIZ MURRILL**
**Attorney General**

By: s/ Andrew Blanchfield
Andrew Blanchfield, T.A. (#16812)
Email: ablanchfield@keoghcox.com
C. Reynolds LeBlanc (#33937)
Email: rleblanc@keoghcox.com
Chelsea A. Payne (#35952)
Email: cpayne@keoghcox.com
Special Assistant Attorneys General
701 Main Street (70802)
Post Office Box 1151
Baton Rouge, Louisiana 70821
Telephone: (225) 383-3796
Facsimile: (225) 343-9612
*(Counsel for Defendants)*

**CERTIFICATE OF SERVICE**

I hereby certify that I have this date electronically filed the foregoing with the Clerk of Court by utilizing the CM/ECF system, and a copy of the above and foregoing was this day forwarded by the Court's ECF Delivery System to all counsel of record, and by electronic mail and U.S. Mail to the Pro Se Plaintiff.

Baton Rouge, Louisiana, this 6th day of March, 2026.

s/Andrew Blanchfield
ANDREW BLANCHFIELD